# EXHIBIT A

**SUMMONS - CIVIL**
JD-CV-1   Rev. 2-13
C.G.S. §§ 51-346, 51-347, 51-349, 51-350, 52-45a,
52-48, 52-259, P.B. Secs. 3-1 through 3-21, 8-1

**STATE OF CONNECTICUT**
**SUPERIOR COURT**
www.jud.ct.gov

See page 2 for instructions

| | |
|---|---|
| ☐ "X" if amount, legal interest or property in demand, not including interest and costs is less than $2,500. | TO: Any proper officer; BY AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby commanded to make due and legal service of this Summons and attached Complaint. |
| ☑ "X" if amount, legal interest or property in demand, not including interest and costs is $2,500 or more. | |
| ☐ "X" if claiming other relief in addition to or in lieu of money or damages. | |

| Address of court clerk where writ and other papers shall be filed (Number, street, town and zip code) (C.G.S. §§ 51-346, 51-350) | Telephone number of clerk (with area code) | Return Date (Must be a Tuesday) |
|---|---|---|
| 95 Washington Street, Htfd Ct | (860) 548-2700 | 5/21   20, 2013 |

| | | | |
|---|---|---|---|
| ☑ Judicial District | G.A. Number: | At (Town in which writ is returnable) (C.G.S. §§ 51-346, 51-349) | Case type code (See list on page 2) |
| ☐ Housing Session | | | Major: C   Minor: 90 |

**For the Plaintiff(s) please enter the appearance of:**

| Name and address of attorney, law firm or plaintiff if self-represented (Number, street, town and zip code) | Juris number (to be entered by attorney only) |
|---|---|
| Tanganyika Gwinn | |
| Telephone number (with area code) | Signature of Plaintiff (if self-represented) |
| (860) 209-4358 | Tanganyika Gwinn / Authorized Representative |

| Number of Plaintiffs: | Number of Defendants: | ☐ Form JD-CV-2 attached for additional parties |
|---|---|---|

| Parties | Name (Last, First, Middle Initial) and Address of Each party (Number; Street; P.O. Box; Town; State; Zip; Country, if not USA) | |
|---|---|---|
| First Plaintiff | Name: TANGANYIKA Gwinn  Address: 69 CONGRESS ST APT C  HARTFORD, CT 06114 | P-01 |
| Additional Plaintiff | Name:  Address: | P-02 |
| First Defendant | Name: Cindy Corrado  Address: JPMorgan Chase Bank NA - 900 Stewart Ave | D-01 |
| Additional Defendant | Name:  Address: Fifth Flr. Garden City NY 11530 | D-02 |
| Additional Defendant | Name:  Address: | D-03 |
| Additional Defendant | Name:  Address: | D-04 |

## Notice to Each Defendant

1. **YOU ARE BEING SUED.** This paper is a Summons in a lawsuit. The complaint attached to these papers states the claims that each plaintiff is making against you in this lawsuit.
2. To be notified of further proceedings, you or your attorney must file a form called an "Appearance" with the clerk of the above-named Court at the above Court address on or before the second day after the above Return Date. The Return Date is not a hearing date. You do not have to come to court on the Return Date unless you receive a separate notice telling you to come to court.
3. If you or your attorney do not file a written "Appearance" form on time, a judgment may be entered against you by default. The "Appearance" form may be obtained at the Court address above or at www.jud.ct.gov under "Court Forms."
4. If you believe that you have insurance that may cover the claim that is being made against you in this lawsuit, you should immediately contact your insurance representative. Other action you may have to take is described in the Connecticut Practice Book which may be found in a superior court law library or on-line at www.jud.ct.gov under "Court Rules."
5. If you have questions about the Summons and Complaint, you should talk to an attorney quickly. **The Clerk of Court is not allowed to give advice on legal questions.**

| Signed (Sign and "X" proper box) | ☐ Commissioner of the Superior Court  ☑ Assistant Clerk | Name of Person Signing at Left  Adam Butvich | Date signed  4/18/13 |
|---|---|---|---|

| If this Summons is signed by a Clerk: | For Court Use Only |
|---|---|
| a. The signing has been done so that the Plaintiff(s) will not be denied access to the courts. | File Date |
| b. It is the responsibility of the Plaintiff(s) to see that service is made in the manner provided by law. | **FILED** |
| c. The Clerk is not permitted to give any legal advice in connection with any lawsuit. | APR 23 2013 |
| d. The Clerk signing this Summons at the request of the Plaintiff(s) is not responsible in any way for any errors or omissions in the Summons, any allegations contained in the Complaint, or the service of the Summons or Complaint. | **HARTFORD J.D.** |

| I certify I have read and understand the above: | Signed (Self-Represented Plaintiff)  Tanganyika Gwinn. | Date |
|---|---|---|

Name and address of person recognized to prosecute in the amount of $250

| Signed (Official taking recognizance; "X" proper box) | ☐ Commissioner of the Superior Court  ☐ Assistant Clerk | Date | Docket Number  135036954 |
|---|---|---|---|

Recognizance explained AB/A                    (Page 1 of 2)

## Instructions

1. Type or print legibly; sign summons.
2. Prepare or photocopy a summons for each defendant.
3. Attach the original summons to the original complaint, and attach a copy of the summons to each copy of the complaint. Also, if there are more than 2 plaintiffs or more than 4 defendants prepare form JD-CV-2 and attach it to the original and all copies of the complaint.
4. After service has been made by a proper officer, file original papers and officer's return with the clerk of court.
5. The party recognized to pay costs must appear personally before the authority taking the recognizance.
6. Do not use this form for the following actions:

(a) Family matters (for example divorce, child support, custody, paternity, and visitation matters).
(b) Summary process actions.
(c) Applications for change of name.

(d) Probate appeals.
(e) Administrative appeals.
(f) Proceedings pertaining to arbitration.
(g) Any actions or proceedings in which an attachment, garnishment or replevy is sought.

---

### ADA NOTICE

The Judicial Branch of the State of Connecticut complies with the Americans with Disabilities Act (ADA). If you need a reasonable accommodation in accordance with the ADA, contact a court clerk or an ADA contact person listed at www.jud.ct.gov/ADA.

---

## Case Type Codes

| Major Description | Codes Major/Minor | Minor Description |
|---|---|---|
| Contracts | C 00 | Construction - All other |
| | C 10 | Construction - State and Local |
| | C 20 | Insurance Policy |
| | C 30 | Specific Performance |
| | C 40 | Collections |
| | C 90 | All other |
| Eminent Domain | E 00 | State Highway Condemnation |
| | E 10 | Redevelopment Condemnation |
| | E 20 | Other State or Municipal Agencies |
| | E 30 | Public Utilities & Gas Transmission Companies |
| | E 90 | All other |
| Miscellaneous | M 00 | Injunction |
| | M 10 | Receivership |
| | M 20 | Mandamus |
| | M 30 | Habeas Corpus (extradition, release from Penal Institution) |
| | M 40 | Arbitration |
| | M 50 | Declaratory Judgment |
| | M 63 | Bar Discipline |
| | M 66 | Department of Labor Unemployment Compensation Enforcement |
| | M 68 | Bar Discipline - Inactive Status |
| | M 80 | Foreign Civil Judgments - C.G.S. 52-604 & C.G.S. 50a-30 |
| | M 82 | Housing Civil Matters |
| | M 83 | Small Claims Transfer to Regular Docket |
| | M 84 | Foreign Protective Order |
| | M 90 | All other |
| Property | P 00 | Foreclosure |
| | P 10 | Partition |
| | P 20 | Quiet Title/Discharge of Mortgage or Lien |
| | P 30 | Asset Forfeiture |
| | P 90 | All other |

| Major Description | Codes Major/Minor | Minor Description |
|---|---|---|
| Torts (Other than Vehicular) | T 02 | Defective Premises - Private - Snow or Ice |
| | T 03 | Defective Premises - Private - Other |
| | T 11 | Defective Premises - Public - Snow or Ice |
| | T 12 | Defective Premises - Public - Other |
| | T 20 | Products Liability - Other than Vehicular |
| | T 28 | Malpractice - Medical |
| | T 29 | Malpractice - Legal |
| | T 30 | Malpractice - All other |
| | T 40 | Assault and Battery |
| | T 50 | Defamation |
| | T 61 | Animals - Dog |
| | T 69 | Animals - Other |
| | T 70 | False Arrest |
| | T 71 | Fire Damage |
| | T 90 | All other |
| Vehicular Torts | V 01 | Motor Vehicles* - Driver and/or Passenger(s) vs. Driver(s) |
| | V 04 | Motor Vehicles* - Pedestrian vs. Driver |
| | V 05 | Motor Vehicles* - Property Damage only |
| | V 06 | Motor Vehicle* - Products Liability Including Warranty |
| | V 09 | Motor Vehicle* - All other |
| | V 10 | Boats |
| | V 20 | Airplanes |
| | V 30 | Railroads |
| | V 40 | Snowmobiles |
| | V 90 | All other |
| | | *Motor Vehicles include cars, trucks, motorcycles, and motor scooters. |
| Wills, Estates and Trusts | W 10 | Construction of Wills and Trusts |
| | W 90 | All other |

# IN THE SUPERIOR COURT OF HARTFORD COUNTY
## STATE OF CONNECTICUT

TANGANYIKA GWINN                             )
                                             )
_____                    )
               **Petitioner/Plaintiff,**     )
                                             )
VS.                                          )
                                             )          No. _____
                                             )
JPMorgan Chase Bank, N.A.                    )
                                             )
_____                    )
               **Respondent/Defendant**      )
                                             )

## COMPLAINT

COMES NOW the Plaintiff, Tanganyika Gwinn, and files this complaint against JPMorgan Chase Bank, N.A., and in support thereof would show the following, to-wit:

### COUNT I

That the Plaintiff financed $60,614.48 for the 2006 BMW, the finance charge was $24,344.08, and the down payment was $9, 500.00 at New Country Motor Cars, located 1 Weston Park Road, Hartford, CT 06120 (dated May 9, 2007).

### COUNT II

I.

That on March 28, 2013 a Certified Letter Mail Receipt 70070710000323967471, to the Defendant demanding for validation and verification of a debt which remains as a charge off on Plaintiff credit account in the amount of $20,482.00.

II.

That despite the demand for validation and verification, a True Bill was requested, in the Letter dated March 28, 2013, for full amount owed for the Satisfaction of the debt.

### COUNT III

III.

That on April 4, 2013 a Letter, from the Defendant and or his agents, was neither signed under Penalties of Perjury nor sufficient evidence to validate such debt. The Defendant and or his agents did not enclose a True Bill to Prove Up The Claim against the Plaintiff that a debt was owed.

COUNT IV

IV.

That on April 15, 2013, about 6:30 P.M., North East Auto Machine located at 392 Tolland Street 2nd Floor, East Hartford, CT 06108, came on the property 185 Pine Lane Ext., Windsor CT and repossessed the 2006 BMW VIN Number WBAEH13406CR51161.

V.

That neither did the Defendant and or his agents comply with § 42a-3-501 nor the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. 1692f § 808 (6) a-c.

VI.

That the Defendant and or his agents have intentionally, maliciously and without just cause, engaged in deceitful business practices and malicious and intentional fraud that were calculated to financially harm the Plaintiff as a direct and proximate cause thereof the Plaintiff have been irreparably harmed.

That as a result of Defendant's action Plaintiff forced to retain an attorney and have incurred cost Defendant is liable.

WHEREFORE PREMISES CONSIDERED, Plaintiff demands a judgment of and from the Defendant in the sum of SIXTY FIVE THOUSAND dollars ($65,000.00) in compensatory damages and TEN THOUSAND dollars ($10,000.00) as punitive damages along with reasonable fees and all cost.

WHEREFORE PREMISES FURTHER CONSIDERED, plaintiff further pray that this Court will issue a temporary injunction against the Defendant preventing said Defendant and or his agents from continuing to financially harm the Plaintiff in the manner set out above in that the Plaintiff have other remedy in law or equity and irreparably harmed should said injunction not be issued.

Plaintiff prays for such other relief as in law or equity she may be entitled.

This the 18 day of April, 2013.

Respectfully submitted,

*Tanganyika Gwinn*

Authorized Representative

# STATE OF CONNECTICUT
## OFFICE OF THE SECRETARY OF THE STATE

I, **DENISE W. MERRILL,** Secretary of the State of Connecticut, and keeper of the seal thereof;

**DO HEREBY CERTIFY,** that LATASHA M. EDWARDS was duly appointed and commissioned a

NOTARY PUBLIC in and for the State of Connecticut, for the term of April 3, 2012 to

April 30, 2017.



**In Testimony Whereof,** I have hereunto

set my hand and affixed the Great Seal of

the State of Connecticut, at Hartford, on

**April 17, 2013.**

_____

Secretary of the State

**CHASE ○**

April 4, 2013

Ms. Tanganyika Gwinn
69 Congress Street # C
Hartford, CT 06112

Re:  Account Ending In 2403

Dear Ms. Gwinn:

Thank you for your March 27, 2013, correspondence to JPMorgan Chase Bank, N.A. ("Chase") regarding your account ending in 2403. Our goal is to provide you with the highest level of service, so I appreciate this opportunity to address your concerns.

In your correspondence, you requested that Chase provide you with documentation validating the debt owed, proof that the account has not been paid in full and that it has charged off. You additionally stated that Chase is inaccurately reporting negative information about your account.

On May 9, 2007, you entered into a Retail Installment Contract ("Contract") with New Country Motor Cars, Inc. of Hartford, CT to finance a 2006 BMW, which was subsequently assigned to Chase. The terms of the agreement are 72 payments of $1,179.98 due on the 8th of each month, beginning on June 8, 2007. Copies of the contract and payment history are enclosed for your review. Please know that together these documents validate the reporting of the original tradeline and the debt owed to Chase.

Our records indicate that your account fell into payment default and in accordance with regulatory guidelines, the account was charged off on September 28, 2012, in the amount of $20,482.23. Due to the charge off, your account balance was accelerated, meaning that it became due in full. The enclosed payment history reflects the account charge off. Please understand that failure to remit balance in full can result in repossession of the vehicle in accordance with the terms of your contract.

If after reviewing the enclosed payment history, you feel that a payment was not applied to your account, please fax a copy of the cancelled check, front and back, to 1-866-535-3403 so we may properly credit your account. This information can also be mailed to the following address:

Chase Auto Finance Executive Office
Attention:  Nailah M. Dawson
900 Stewart Avenue, 5th Floor
Garden City, NY 11530

If you wish to pay off your above referenced loan account, Chase will only accept payment in the form of personal checks, cashiers checks, money orders and cash payments made at a Chase branch.

In response to your claim that Chase has reported negative information on the account, please understand that Chase, in accordance with applicable laws and regulations, is required to report accurate account activity to the credit reporting agencies, Experian, Equifax and TransUnion, based on your record of payment. Please be advised that unless we are reporting inaccurate information, we are unable to change our reporting. We have confirmed with the credit bureaus that your account is reporting accurately as charged off. Therefore, it is our position that your contract with Chase is valid and enforceable, and you remain bound under the terms of the agreement.

This is an attempt to collect a debt. Any information obtained will be used for that purpose.

**JPMorgan Chase Bank, N.A. · Chase Auto Finance · NY2-S502, 900 Stewart Avenue, Garden City, NY 11530**

**CHASE ◻**

Ms. Tanganyika Gwinn
Re:  Account Ending In 2403
April 4, 2013
Page 2

Ms. Gwinn, while I understand that this is not the response that you had hoped for, I believe that your concerns have been addressed. If you would like to discuss the above matter further, please call our Collections Manager, Mr. Bruce Kimbell at 1-602-221-3798. If you need assistance on an additional matter related to your account, please call me directly at 1-800-643-1599, extension 229-2016.

Sincerely,

Nailah M. Dawson
Executive Specialist
Chase Auto Finance Executive Office

cc:  Annemarie DeTommaso, Vice President

Enclosures

| Date | Date | Amount | Code | Description | Amount | Amount | Balance |
|---|---|---|---|---|---|---|---|
| 10/30/2009 | 10/30/2009 | $10.00 | 08088 | Direct CK Fee | $0.00 | $0.00 | $45,181.04 |
| 10/30/2009 | 10/30/2009 | $10.00 | 08087 | Direct CK Pymnt | $0.00 | $0.00 | $45,181.04 |
| 10/30/2009 | 11/17/2009 | $10.00 | 09087 | Rev Misc | $0.00 | $0.00 | $45,181.04 |
| 10/30/2009 | 10/30/2009 | $1,179.98 | 08080 | CAF Direct Ck Pmt | $1,077.40 | $102.58 | $44,103.64 |
| 10/30/2009 | 11/17/2009 | $1,179.98 | 09080 | RTN PMT-INSUFF FUNDS | $1,077.40 | $102.58 | $45,181.04 |
| 11/02/2009 | 11/17/2009 | $10.00 | 07011 | Late Charge | $0.00 | $0.00 | $45,181.04 |
| 11/07/2009 | 11/09/2009 | $1,200.00 | 08080 | Teller Pmt | $980.16 | $219.84 | $44,200.88 |
| 12/01/2009 | 12/01/2009 | $10.00 | 07011 | Late Charge | $0.00 | $0.00 | $44,200.88 |
| 12/07/2009 | 12/07/2009 | $1,200.00 | 08080 | Teller Pmt | $769.86 | $430.14 | $43,431.02 |
| 12/28/2009 | 12/28/2009 | $10.00 | 07011 | Direct CK Fee | $0.00 | $0.00 | $43,431.02 |
| 12/28/2009 | 12/28/2009 | $10.00 | 08087 | Direct CK Pymnt | $0.00 | $0.00 | $43,431.02 |
| 12/28/2009 | 12/28/2009 | $1,230.82 | 08080 | CAF Direct Ck Pmt | $934.97 | $295.85 | $42,496.05 |
| 12/31/2009 | 12/31/2009 | $10.00 | 07011 | Late Charge | $0.00 | $0.00 | $42,496.05 |
| 02/01/2010 | 02/01/2010 | $1,200.00 | 08080 | Teller Pmt | $717.52 | $482.48 | $41,778.53 |
| 02/01/2010 | 02/01/2010 | $10.00 | 07011 | Late Charge | $0.00 | $0.00 | $41,778.53 |
| 03/03/2010 | 03/03/2010 | $10.00 | 07011 | Late Charge | $0.00 | $0.00 | $41,778.53 |
| 03/08/2010 | 03/08/2010 | $1,240.00 | 08080 | Teller Pmt | $765.68 | $474.32 | $41,012.85 |
| 03/29/2010 | 03/29/2010 | $1,240.00 | 08080 | Teller Pmt | $960.61 | $279.39 | $40,052.24 |
| 03/31/2010 | 03/31/2010 | $10.00 | 07011 | Late Charge | $0.00 | $0.00 | $40,052.24 |
| 04/21/2010 | 04/21/2010 | $1,200.00 | 08080 | Teller Pmt | $901.18 | $298.82 | $39,151.06 |
| 05/03/2010 | 05/03/2010 | $10.00 | 07011 | Late Charge | $0.00 | $0.00 | $39,151.06 |
| 06/01/2010 | 06/01/2010 | $10.00 | 07011 | Late Charge | $0.00 | $0.00 | $39,151.06 |
| 06/09/2010 | 06/09/2010 | $1,200.00 | 08080 | Teller Pmt | $577.70 | $622.30 | $38,573.36 |
| 07/01/2010 | 08/18/2010 | $10.00 | 07011 | Late Charge | $0.00 | $0.00 | $38,573.36 |
| 07/13/2010 | 07/13/2010 | $20.02 | 08089 | Teller Prin Pmt | $20.02 | $0.00 | $38,553.34 |
| 07/13/2010 | 07/13/2010 | $1,179.98 | 08080 | Teller Pmt | $754.55 | $425.43 | $37,798.79 |
| 07/30/2010 | 07/30/2010 | $1,200.00 | 08080 | CAF Direct Ck Pmt | $991.56 | $208.44 | $36,807.23 |
| 07/30/2010 | 08/18/2010 | $1,200.00 | 09080 | RTN PMT-INSUFF FUNDS | $991.56 | $208.44 | $37,798.79 |
| 08/02/2010 | 08/18/2010 | $10.00 | 07011 | Late Charge | $0.00 | $0.00 | $37,798.79 |
| 08/11/2010 | 08/11/2010 | $1,200.00 | 08080 | Teller Pmt | $844.43 | $355.57 | $36,954.36 |
| 08/31/2010 | 08/31/2010 | $10.00 | 07011 | Late Charge | $0.00 | $0.00 | $36,954.36 |
| 09/11/2010 | 09/13/2010 | $1,200.00 | 08080 | Teller Pmt | $828.39 | $371.61 | $36,125.97 |
| 10/01/2010 | 10/01/2010 | $10.00 | 07011 | Late Charge | $0.00 | $0.00 | $36,125.97 |
| 10/13/2010 | 10/13/2010 | $1,200.00 | 08080 | Teller Pmt | $825.00 | $375.00 | $35,300.97 |
| 11/01/2010 | 11/01/2010 | $10.00 | 07011 | Late Charge | $0.00 | $0.00 | $35,300.97 |
| 11/22/2010 | 11/22/2010 | $1,200.00 | 08080 | Teller Pmt | $741.96 | $458.04 | $34,559.01 |
| 11/23/2010 | 11/23/2010 | $00.00 | 03035 | Extension | $0.00 | $0.00 | $34,559.01 |
| 12/31/2010 | 12/31/2010 | $10.00 | 07011 | Late Charge | $0.00 | $0.00 | $34,559.01 |
| 01/31/2011 | 01/31/2011 | $10.00 | 07011 | Late Charge | $0.00 | $0.00 | $34,559.01 |
| 02/19/2011 | 02/22/2011 | $1,200.00 | 08080 | Teller Pmt | $202.28 | $997.72 | $34,356.73 |
| 03/03/2011 | 03/03/2011 | $10.00 | 07011 | Late Charge | $0.00 | $0.00 | $34,356.73 |
| 03/21/2011 | 03/21/2011 | $1,200.00 | 08080 | Teller Pmt | $865.65 | $334.35 | $33,491.08 |
| 03/31/2011 | 03/31/2011 | $10.00 | 07011 | Late Charge | $0.00 | $0.00 | $33,491.08 |
| 05/02/2011 | 05/02/2011 | $1,200.00 | 08080 | Teller Pmt | $743.72 | $456.28 | $32,747.36 |
| 05/02/2011 | 05/02/2011 | $10.00 | 07011 | Late Charge | $0.00 | $0.00 | $32,747.36 |
| 05/31/2011 | 05/31/2011 | $10.00 | 07011 | Late Charge | $0.00 | $0.00 | $32,747.36 |
| 06/02/2011 | 06/02/2011 | $1,190.00 | 08080 | Teller Pmt | $860.69 | $329.31 | $31,886.67 |
| 06/30/2011 | 06/30/2011 | $1,200.00 | 08080 | Teller Pmt | $910.38 | $289.62 | $30,976.29 |
| 07/01/2011 | 07/01/2011 | $10.00 | 07011 | Late Charge | $0.00 | $0.00 | $30,976.29 |
| 07/28/2011 | 07/28/2011 | $1,200.00 | 08080 | Teller Pmt | $918.65 | $281.35 | $30,057.64 |
| 08/01/2011 | 08/01/2011 | $10.00 | 07011 | Late Charge | $0.00 | $0.00 | $30,057.64 |
| 08/31/2011 | 08/31/2011 | $10.00 | 07011 | Late Charge | $0.00 | $0.00 | $30,057.64 |
| 09/01/2011 | 09/01/2011 | $1,200.00 | 08080 | Teller Pmt | $858.75 | $341.25 | $29,198.89 |
| 09/01/2011 | 09/10/2011 | $10.00 | 08010 | Waive Late Chg | $0.00 | $0.00 | $29,198.89 |
| 10/03/2011 | 10/03/2011 | $10.00 | 07011 | Late Charge | $0.00 | $0.00 | $28,330.40 |
| 10/06/2011 | 10/06/2011 | $1,200.00 | 08080 | Teller Pmt | $868.49 | $331.51 | $27,360.15 |
| 10/31/2011 | 10/31/2011 | $1,200.00 | 08080 | Teller Pmt | $970.25 | $229.75 | $27,360.15 |
| 10/31/2011 | 10/31/2011 | $10.00 | 07011 | Late Charge | $0.00 | $0.00 | $27,360.15 |
| 12/01/2011 | 12/01/2011 | $10.00 | 07011 | Late Charge | $0.00 | $0.00 | $26,497.40 |
| 12/08/2011 | 12/08/2011 | $1,200.00 | 08080 | Teller Pmt | $862.75 | $337.25 | $26,497.40 |
| 01/03/2012 | 01/03/2012 | $10.00 | 07011 | Late Charge | $0.00 | $0.00 | $25,546.55 |
| 01/06/2012 | 01/06/2012 | $1,200.00 | 08080 | Teller Pmt | $950.85 | $249.15 | $25,546.55 |
| 01/31/2012 | 01/31/2012 | $10.00 | 07011 | Late Charge | $0.00 | $0.00 | $24,635.80 |
| 02/10/2012 | 02/10/2012 | $1,200.00 | 08080 | Teller Pmt | $910.75 | $289.25 | $24,635.80 |
| 03/02/2012 | 03/02/2012 | $10.00 | 07011 | Late Charge | $0.00 | $0.00 | $23,706.77 |
| 03/15/2012 | 03/15/2012 | $1,200.00 | 08080 | Teller Pmt | $929.03 | $270.97 | $23,706.77 |
| 04/02/2012 | 04/02/2012 | $10.00 | 07011 | Late Charge | $1,008.28 | $191.72 | $22,698.49 |
| 04/09/2012 | 04/09/2012 | $1,200.00 | 08080 | Teller Pmt | $0.00 | $0.00 | $22,698.49 |
| 05/01/2012 | 05/01/2012 | $10.00 | 07011 | Late Charge | $1,016.43 | $183.57 | $21,682.06 |
| 05/04/2012 | 05/04/2012 | $1,200.00 | 08080 | Non-Chase Bill Pmt | $0.00 | $0.00 | $21,682.06 |
| 05/31/2012 | 05/31/2012 | $10.00 | 07011 | Late Charge | $821.23 | $378.77 | $20,860.83 |
| 06/27/2012 | 06/27/2012 | $1,200.00 | 08080 | Non-Chase Bill Pmt | $0.00 | $0.00 | $20,860.83 |
| 07/02/2012 | 07/02/2012 | $10.00 | 07011 | Late Charge | $0.00 | $0.00 | $20,860.83 |
| 07/31/2012 | 07/31/2012 | $10.00 | 07011 | Late Charge | $808.60 | $391.40 | $20,052.23 |
| 08/24/2012 | 08/24/2012 | $1,200.00 | 08080 | Teller Pmt | $0.00 | $0.00 | $20,052.23 |
| 08/31/2012 | 08/31/2012 | $10.00 | 07011 | Late Charge | $20,052.23 | $0.00 | $0.00 |
| 09/28/2012 | 09/28/2012 | $20,052.23 | 07083 | Charge Off | $0.00 | $0.00 | $0.00 |
| 09/28/2012 | 09/28/2012 | $40.00 | 08087 | Direct CK Pymnt | $0.00 | $0.00 | $0.00 |
| 09/28/2012 | 09/28/2012 | $390.00 | 08088 | Late Chg Paymnt | $0.00 | $0.00 | $0.00 |



**RETAIL INSTALLMENT CONTRACT**

95409103

**COPY**

1. NATURE OF CONTRACT: ☐ If this box is checked, this is a simple interest contract WITH a "Balloon Payment" as the last scheduled payment. If this box is not checked, this is a simple interest contract WITHOUT a "Balloon Payment" as the last scheduled payment.

| Buyer (and Co-Buyer) Name(s) and Address(es) | Seller (Creditor) Name and Business Address |
|---|---|
| TARGARIYA GUINN | NEW COUNTRY MOTOR CARS, INC. |
| 69 CONGRESS ST #C | 1 WESTON PARK ROAD |
| HARTFORD CT 06112 | HARTFORD, CT 06120 |

2. WHO IS BOUND: You, the Buyer (and Co-Buyer, if any) may buy the vehicle described below for cash or on credit. By signing below, you choose to buy the vehicle on credit under the terms on the front and back of this Contract and are individually liable (jointly and severally if both a Buyer and Co-Buyer sign below) for any amount due. In this Contract, "we," "us," and "our" mean the Seller named above and, after assignment and acceptance, the Seller's assignee, JPMorgan Chase Bank, N.A., acting as its own or as agent for an affiliated entity (and any subsequent assignee).

3. DESCRIPTION OF VEHICLE: You agree to buy and we agree to sell the following vehicle:

| New, Used or Demo | Year | WEIGHT (lbs.) | Make and Model | Body Type | Vehicle Identification No. | Key No. | Primary Use for Which Purchased |
|---|---|---|---|---|---|---|---|
| NEW | 06 | | BMW | | WBAEH13406CRS1151 | | ☑personal, family or household ☐business ☐agricultural |

If truck – Describe body, gross vehicle weight and major items of equipment sold:

4. NOTICE TO BUYERS OF USED OR DEMONSTRATION VEHICLES: The information you see on the window form for this vehicle is part of this Contract. Information on the window form overrides any contrary provisions in the contract of sale.

**5. FEDERAL TRUTH-IN-LENDING DISCLOSURES**

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | AMOUNT FINANCED The amount of credit provided to you or on your behalf. | TOTAL OF PAYMENTS The amount you will have paid after you have made all payments as scheduled. | TOTAL SALE PRICE The total cost of your purchase on credit, including your downpayment of $9500.00 |
|---|---|---|---|---|
| 11.84 % | $ 24344.08 | $ 60614.48 | $ 84958.56 | $ 94458.56 |

YOUR PAYMENT SCHEDULE WILL BE:

| Number of Payments | Amount Of Payments | When Payments Are Due |
|---|---|---|
| 72 | 1179.98 | Monthly, beginning 06/08/07 |

PREPAYMENT: You have the right to pay off this Contract early. If you do so, you will not have to pay a penalty.

SECURITY: You are giving us a security interest in the vehicle being purchased.

LATE FEE: If a payment is more than 10 days late, you will pay us the lesser of $10 or 5% of the unpaid amount of that payment.

OTHER TERMS: Please read this Contract, including the reverse side, for additional information on security interests, nonpayment, default, and our right to require repayment in full before the scheduled maturity date.

**6. ITEMIZATION OF THE AMOUNT FINANCED**

1. Cash Price (including any accessories, and taxes): $ 69194.48

2. Downpayment:
   A. Your Net Trade-in is a ___06___ ___DODGE___ ___CHARGER___ $ N/A
      Year Make Model
   B. Cash Downpayment $ 9500.00
   C. Total Downpayment (A + B): $ 9500.00

3. Unpaid Balance of Cash Price (1 − 2C): $ 59694.48

4. Other Charges Including Amounts Paid to Others on Your Behalf:
   A. Cost of Optional Credit Insurance for the Term(s) Specified in Paragraph 10 of this Contract Paid to the Insurance Company Named in Paragraph 10:
      Life $ N/A   Disability, Accident and Health $ N/A   N/A    I request Optional Gap coverage under this Contract. My signature in Section 6E, line B and for the amount shown in Section 4E, if no amount is shown and you have not received a copy of a Gap waiver or insurance policy, you are not buying Optional Gap coverage. N/A
   B. Official Lien Fees Paid to Government Agencies: $ 135.00
   C. Government License and Registration Fees (itemize): REGISTRATION $ 35.00
   D. Government Certificate of Title Fees: $ 750.00
   E. Other Charges (Describe and who will receive payment and purpose)   Buyer's and Co-Buyer's Initials X
      To _____ N/A _____ For Optional Gap Coverage N/A $ N/A
      To _____ For _____ $ N/A
   F. Total Other Charges and Amounts Paid to Others on Your Behalf (A + B + C + D + E): $ 920.00

5. Amount Financed (Unpaid Balance) (3 + 4F): $ 60614.48

7. PROMISE TO PAY: You promise to pay us the Amount Financed shown above, plus a Finance Charge determined by applying a daily rate of 1/365th (1/366th in a leap year) of the Annual Percentage Rate shown above to the unpaid balance of the Amount Financed each day.

8. PAYMENTS BEFORE OR AFTER DUE DATE: This is a simple interest contract. This means that the amount of the Finance Charge shown above may vary depending upon when your payments are received. If no late fee and/or return check charge is owed, we credit each payment first to accrued Finance Charge and then to the unpaid balance of the Amount Financed. If a late fee and/or return check charge is owed, we credit each payment first to accrued Finance Charge, then to the unpaid balance of the Amount Financed, then to unpaid late fee and/or return check charge, and then to the unpaid balance of the Amount Financed. We compute your Finance Charge each day on the unpaid balance of the Amount Financed. The earlier you make payments before their due dates, the less Finance Charge you will owe. The later you make payments after they are due, the greater the Finance Charge. If you make any payments after they are due, including if we allow you to extend the term of this Contract, your final payment may be higher than originally scheduled. We will advise you of any additional amount you owe us (if it is $1.00 or more).

9. BALLOON PAYMENT: IF THIS CONTRACT IS CHECKED WITH "BALLOON PAYMENT" ABOVE, THIS PARAGRAPH APPLIES. THIS CONTRACT IS NOT PAYABLE IN INSTALLMENTS OF EQUAL AMOUNTS. THE LAST SCHEDULED PAYMENT IS SUBSTANTIALLY LARGER THAN EACH OF THE OTHER SCHEDULED PAYMENTS. The due date and amount of this last scheduled payment are shown above. Paragraph 12 applies and the following are the readings and/or charges referred to in Paragraph 12: the (1) maximum allowable odometer reading is _____ ; (2) charge per each excess mile over the maximum allowable mileage is _____ ; and (3) disposition fee is _____ .

10. OPTIONAL CREDIT INSURANCE: Credit life and credit disability, accident and health insurance are not required to obtain credit and will not be provided under this Contract unless you sign for them and agree to pay the additional cost. The policies or certificates issued by the insurer will describe the terms and conditions in further detail.

If you want the following insurance, sign below:
☐ Life ☐ Buyer ☐ Co-Buyer ☐ Both) at a premium of $ _____ for a term of _____
Credit life insurance will pay your debt on this Contract up to $ _____
☐ Disability, Accident and Health (Buyer Only) at a premium of $ _____ for a term of 72
Credit disability, accident and health insurance will pay your debt on this Contract up to $ _____
The name of the insurer is _____

X _____ Buyer's Signature   Name   Home Office Address   Date
X _____ Co-Buyer's Signature   Date

11. REQUIRED PROPERTY INSURANCE: Insurance coverage for loss or damage to the vehicle (collision, fire and theft) is required. You have the option of furnishing the required insurance either through your existing policies or by purchasing equivalent insurance coverage through anyone you wish who is acceptable to the Seller. If you elect to purchase this coverage through the Seller, it will be furnished by _____ for the initial term of _____ at a premium of $ _____ but such charge is not included in this Contract.

IMPORTANT: READ THE ADDITIONAL TERMS ON REVERSE SIDE BEFORE SIGNING BELOW.

The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this Contract and retain its right to receive a part of the Finance Charge.

**BY SIGNING THIS CONTRACT, YOU ACKNOWLEDGE THAT IT CONTAINS AN "AGREEMENT TO ARBITRATE DISPUTES" ON THE REVERSE SIDE, THAT YOU HAVE READ IT AND AGREE TO ITS TERMS.**

WARNING: Any insurance provided by the Seller does not cover liability for injury to persons or damage to property of others unless indicated in the policy.

ACKNOWLEDGEMENT: You acknowledge that you have received a copy of this Contract with all blanks filled and that you have read it and that you understand it. You further acknowledge that, to the extent any payments under this Contract are deferred, you have been informed on the reverse side of this Contract of the consequences of failing to make a deferred first monthly payment (and any other deferred monthly payment) when due.

NOTICE TO THE BUYER: 1. Do not sign this Contract before you read it or if it contains any blank space. 2. You are entitled to a completely filled-in copy of the Contract when you sign it. 3. Under the law, you have the following rights, among others: (a) to pay off in advance the full amount due and obtain a partial refund of an unearned finance charge; (b) to redeem the property if repossessed for a default; (c) to require, under certain conditions, a resale of the property if repossessed.

Buyer Signs X _____   Co-Buyer Signs X _____

By signing here, the Seller agrees to the terms of this Contract and assigns this Contract to Seller's assignee under the terms agreed to by Seller and Seller's assignee.

Seller (Creditor) Signs _____ By _____ Title _____

FORM NO. CAFR-Connecticut REV. 2/05   15040(CA) 988-42-CABCO-R42 2005 0243-032   Pg. 5/05   © 2005 JPMorgan Chase Bank, N.A.   CHASE COPY

OTHER IMPORTANT AGREEMENTS



If you wish to "refinance" your last scheduled payment, you must first pay all amounts owing under this Contract (including accrued Finance Charge) as of the due date of your last scheduled payment, except for the amount of the last scheduled payment. If you meet our credit requirements, you may refinance your last scheduled payment at the annual percentage rate (interest rate) and for a monthly term then available. This means the finance charges at such rate will continue to accrue and you will make monthly payments in an amount calculated by us based on such new annual percentage rate and monthly term until you pay the amounts you owe under this Contract in full. We will require that you sign a new agreement setting forth the terms of the refinanced obligation.

Instead of refinancing the balloon payment, you may return and sell the vehicle to us. This is called "the Sale Option." To exercise the Sale Option, for resale of the following conditions by the date the last scheduled payment is due: (1) you give us at least 30 days advance written notice of your election to exercise the Sale Option; (2) you pay us the disposition fee, if any, shown in Paragraph 9, and all amounts owing under this Contract (including accrued Finance Charge) through the date the last scheduled payment is due; (3) you deliver the vehicle to us within five days before the last scheduled payment is due, at a place we designate, together with the vehicle title, which shows no liens other than ours, and other papers we need signed by you in order to transfer vehicle ownership; (4) when you deliver the vehicle, you put the allowable mileage stated in Paragraph 9, (excludes the mileage shown in Paragraph 9 for each such excess mile); and (5) if the vehicle is not in "good running order and condition" when you deliver it to us, you pay us the amount it costs us or would cost us to put the vehicle in good running order and condition.

The vehicle will not be in good running order and condition if one or more of the following applies:

- The manufacturer's maintenance schedule has not been met;
- The vehicle will not pass any inspection to which it is or will be subject;
- The vehicle does not have 4 undamaged matching tires (no retreads), plus a spare tire, all comparable in quality to original equipment, with at least 1/8in inch tread on each tire at its lowest point;
- The owner's manual or maintenance schedule is missing;
- The vehicle is not returned with the same or comparable equipment and accessories (including jack and wheel wrench) in working order, as installed at time of delivery;
- There are rips, tears, burns, soiling or excessive wear to the carpet, seats, doors, headliner or dashboard or in the trunk area;
- There are scratches, dents, bits, rust, paint or cracks in the fenders, bumpers, grill, roof, hood, trunk or doors, other body damage or improper repairs;
- The vehicle has been repainted in other than its original color;
- The engine, drive train or other mechanical, safety and electrical parts do not operate properly;
- There are any special identifications, markings or modifications anywhere on or in the vehicle;
- The windows, lenses or lights are cracked or broken;
- Damage has resulted from flood water, hail, sand, excessive use, abuse, misuse, negligence or accident.

If you disagree with the amount we determine to be necessary to restore the vehicle to good running order and condition, you may obtain, at your expense, and within 10 days of our determination, a written estimate of such amount from an independent appraiser acceptable to us (e.g., a factory authorized dealer). If you do so, the amount you must pay us will be the lesser of (a) the charge we determine to be necessary to restore the vehicle to good running order and condition; or (b) the charge determined by the appraiser to be necessary to restore the vehicle to good running order and condition. Delivery of the vehicle to us pursuant to all of the terms of the Sale Option above will satisfy all of your obligations under this Contract.

13. OWNERSHIP AND RISK OF LOSS: You will pay us all you owe under this Contract even if the vehicle is damaged, destroyed or missing. You will not give possession of the vehicle to others or sell, transfer, or remove the vehicle from the United States for 30 days without our written permission. You will maintain the vehicle in good running order and condition, expect for wear and tear caused by ordinary use, and permit us to inspect the vehicle at any reasonable time. You will not make or permit to be made any material change in the vehicle. You will not expose the vehicle to misuse or confiscation or permit anyone to use the vehicle for any unlawful purpose. You will keep the vehicle free of any claims and seizures by any government authority. You will not rent the vehicle to others or carry passengers for hire. Unless you notify us in writing otherwise, you will keep the vehicle at your address stated on the front of this Contract. You will immediately notify us of any change in your address or the address where in the vehicle is regularly located. We are not obligated to do so, but we may elect to pay any liens, fines, repair bills, or storage bills in connection with the vehicle, or acquire title to or other interests in the vehicle. If we do so, we will let you know the dollar amount and type of charge. You agree to repay such amount to us when we ask for it. Any amount we pay will be added to the amount you owe us and will be due immediately. This amount will earn finance charges from the date we pay it at the Annual Percentage Rate (Interest Rate) shown until paid in full.

14. SECURITY INTEREST: You are giving us a security interest in the vehicle being purchased, any accessions to the vehicle, and any accessories, equipment and replacement parts installed in the vehicle. The security interest also covers insurance premiums or other products financed in this Contract, proceeds of insurance policies on the vehicle, and proceeds of any insurance policies on your life or health financed in this Contract. The security interest secures payment of all amounts you owe under this Contract and in any transfer, renewal, extension, refinancing, modification, or assignment of this Contract. It also secures your other agreements in this Contract. You will cause or cooperate in creating our security interest (lien) on the vehicle to be shown on the title. You will not allow any subordinate or other liens to be placed on the vehicle.

15. REQUIRED INSURANCE: You will keep the vehicle insured with a policy satisfactory to us, for the term of this Contract. This insurance you maintain will include comprehensive fire, theft and collision coverage, insuring the vehicle in an amount sufficient to cover the vehicle's value. You will make us loss payee and provide written evidence of insurance when we ask for it. We may (i) make any claim under your insurance policy, (ii) cancel the insurance on your default under this Contract, and (iii) receive any insurance settlement under your policy and apply the amounts received, at our option, to repair the vehicle or to your debt under this Contract. If the vehicle is insured, you must pay all you owe under this Contract even if the vehicle is stolen, lost, damaged, or destroyed.

16. OPTIONAL GUARANTEED AUTO PROTECTION (GAP) COVERAGE: GAP coverage is not required to obtain credit and you may purchase it from any company you want which is authorized to sell such coverage and acceptable to the Seller. If you elect to purchase Gap coverage under this Contract, it will be furnished by the Gap company and at the cost stated in Paragraph 9, Subparagraph 4E of the Itemization of the Amount Financed located on the reverse side of this Contract. The contract issued by the Gap company will describe the terms and conditions of this coverage. To purchase Gap coverage under this Contract make the space provided in Paragraph 9, Subparagraph 4E of the Itemization of the Amount Financed located on the reverse side of this Contract. This coverage will not be provided if you do not initial in the appropriate space provided.

17. INSURANCE CHARGES RETURNED TO US: If any charge for required insurance is returned to us, it may be credited to your account or used to buy similar insurance for insurance which covers only our interest in the vehicle (to the extent permitted by law). If any charge for optional insurance or other products financed in this Contract, is returned to us (e.g., refund on credit life insurance), it will be credited to your account or returned to you.

18. DEFAULT: You are in default if: (1) you fail to pay any payment when due; (2) you break any of the agreements in this Contract; (3) you die; (4) any guarantor dies; (5) you cannot pay your debts as they become due; (6) any person tries to take any of your property by legal proceedings while it is in our possession or control; (7) you make materially false statements in applying for the Contract; or (8) bankruptcy or insolvency proceedings are initiated by or against you. If you default, we may (subject to any right you may have to cure the default): (1) take immediate possession of the vehicle (repossess the vehicle) with or without legal process; (2) demand that you pay all you owe on this Contract at once, which will be subject to interest at the greater of the Annual Percentage Rate that applies to this Contract (but not to exceed the highest rate permitted by law for taking and storing the vehicle and all other remedies permitted by law or that we have such amount; and (3) exercise any other legal or equitable remedy available to us.

19. REPOSSESSION AND REDEMPTION OF THE VEHICLE: Repossession means our taking the vehicle from you. To take the vehicle we can enter your property, or the property where the vehicle is stored, as long as we do not breach the peace. If there is any personal property in the vehicle, such as clothing, we can store it for you. Any accessories, equipment or replacement parts will remain with the vehicle. If we repossess the vehicle, within notice to you as required by applicable law, you have the right to get it back (redeem it) by paying the full outstanding balance owing on the Contract plus the cost of taking and storing the vehicle and our other expenses.

20. SALE OF THE REPOSSESSED VEHICLE: We will send you a written notice of sale at least 10 days before selling the vehicle. If you do not redeem, we may sell the vehicle at public or private sale. Before the sale, we can sell it. We will use the net proceeds of sale to pay all or part of your debt under this Contract. The "net proceeds of sale" consist of the grossor of the vehicle's fair market value (as defined in section 36(a)-785(g) of Connecticut's Retail Installment Sales Financing Law) or the vehicle's selling price minus, to the extent permitted by law, any (1) charges for repossessing the vehicle (which include payment of liens, fees, taxes, fines, or bills due in connection with the vehicle); (2) charges for storing, cleaning, advertising and selling the vehicle; (3) attorney's reasonable fees and court costs/are incur in connection with repossession by the vehicle; and (4) other charges permitted by law.

If you owe us less than the net proceeds of sale, the difference is due to you, unless someone else has an interest in the vehicle and we must pay such excess to them. For example, we may be required to pay a lender who has given you a loan and has also taken a security interest in the vehicle.

If you owe more than the net proceeds of sale, to the extent allowed by law you will pay us the difference between the net proceeds of sale and what you owe when we ask for it. If you do not pay this amount when asked, you may also be charged interest on this amount at the greater of the highest lawful rate, or the Annual Percentage Rate that applies to this Contract (but not to exceed the highest rate permitted by law), until you do pay all you owe us.

21. COLLECTION OR ENFORCEMENT COSTS: If you default and we hire an attorney who is not our salaried employee to collect what you owe or to otherwise enforce this Contract, you will pay such attorney's fees up to an amount not exceeding 15% of the amount that is due and payable when this Contract is referred to such attorney, plus court costs.

22. RETURN CHECK CHARGE: If this Contract relates to a motor vehicle with a cash price greater than $50,000, if any check, draft or other item you send in payment of your obligation on this Contract is returned unpaid for any reason, we may charge you, at our option, and you agree to pay a return check charge of $20.

23. DELAY IN ENFORCING RIGHTS AND CHANGES TO THIS CONTRACT: We can delay or refrain from enforcing any of our rights under this Contract without losing them. For example, we can extend the time for making some payments without penalty or enforcing others. Any change in terms of this Contract must be in writing and signed by us. No oral changes are binding. Any provision of this Contract that conflicts with applicable law will be considered modified to comply with that law and the remaining provisions shall continue.

24. WARRANTIES SELLER DISCLAIMS: Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this Contract, the Seller makes no warranties, express or implied on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.

25. RIGHT TO OFFSET: To the extent permitted by law, if you default, we have the right to pay all or part of the amounts owed under this Contract from any deposits or funds you have with us without telling you ahead of time.

26. CREDIT REPORTING: We may obtain a consumer credit report from one or more consumer credit reporting agencies (credit bureaus) in connection with your application and as otherwise allowed by applicable law. You agree that we may also verify your employment, income, assets and debts.

27. GOVERNING LAW: This Contract is governed by the applicable laws of the State of Connecticut, to the extent that such laws are not preempted by the laws of the United States.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only to goods or services obtained primarily for personal, family, or household uses. In all other cases, Buyer will not assert against any subsequent holder or assignee of this Contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this Contract.

If you have chosen to defer your first monthly payment under this Contract, you will owe the Finance Charges on the unpaid Amount Financed beginning from the date of this Contract at the Annual Percentage Rate shown on the reverse side, even though your first monthly payment due date has been deferred. If you fail to make your deferred first (or any other) monthly payment on time, you will continue to owe Finance Charges on the unpaid Amount Financed beginning from the date of this Contract, and we may also exercise our rights described in this Contract, including (for example) the right to assess late fees, require payment in full of all amounts due under the Contract and the right to repossess the vehicle that secures repayment of this Contract.

**AGREEMENT TO ARBITRATE DISPUTES**

The following Arbitration Agreement can significantly affect your rights in any dispute with us. Please read it carefully before signing this Contract.

1. IF EITHER OF US CHOOSES, ANY CLAIM OR DISPUTE BETWEEN US (AS DEFINED BELOW) WILL BE DECIDED BY ARBITRATION AND NOT IN COURT OR BY A JURY TRIAL.
2. IF EITHER OF US CHOOSES TO ARBITRATE, THEN YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS OR OTHER REPRESENTATIVE ON BEHALF OF OTHER PERSONS OR AS A CLASS MEMBER OR OTHER REPRESENTED PERSON ON ANY CLASS CLAIM OR OTHER REPRESENTATIVE TYPE OF CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS OR OTHER REPRESENTATIVE ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this clause, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arise out of or relate to your credit application, this Contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class or other representative type of action. You expressly waive any right you may have to arbitrate a class or other representative type of action. You may choose any one of the following arbitration organizations: the American Arbitration Association, 335 Madison Ave., Floor 10, New York, NY 10017-4605 (www.adr.org) or The National Arbitration Forum, Box 50191, Minneapolis, MN 55405-0191 (www.arb-forum.com). The arbitration shall be conducted in accordance with this Arbitration Agreement and, unless otherwise provided for in this Agreement to Arbitrate Disputes, the rules of the arbitration organization you chose (the "Arbitration Rules"). You may get a copy of the Arbitration Rules by contacting the arbitration organization or visiting its website.

The arbitrator shall be an attorney or retired judge selected in accordance with the Arbitration Rules. The arbitrator shall apply governing substantive law in making an award. The arbitration hearing shall be conducted in the federal district in which you reside. The arbitrator's decision shall be in writing and either party may appeal the arbitrator's decision through the arbitration organization you chose. We will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $1,500. We will also pay any additional amount of such fees that the arbitrator determines we must pay in order to make this Agreement to Arbitrate Disputes enforceable. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. The arbitrator's award shall be final and binding on all parties, except that the losing party may request a new arbitration if allowed by the Arbitration Rules. This Agreement to Arbitrate Disputes, and any arbitration conducted hereunder, shall be governed by the Federal Arbitration Act (9 U.S.C. § et seq.) and not by any state law concerning arbitration.

You and we retain any rights to self-help remedies, such as repossession. You and we retain the right to seek individual remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies or filing suit. Any court having jurisdiction may enter judgment on the arbitrator's award. This agreement shall survive any termination, payoff or transfer of this Contract. If any part of this Agreement to Arbitrate Disputes, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable.

CAPA-Connecticut REV. (3/05)   10 090/A CALL 0682-42-2-02 OR FAX 1(800) 759-6034
© 2005 JPMorgan Chase Bank, N.A.

GWINN, TANGANYIKA                107 115 09 4724 03                COPY

| Eff. Date | Post Date | Amount | Code | Description | Principal | Interest | Balance |
|-----------|-----------|--------|------|-------------|-----------|----------|---------|
| 06/13/2007 | 06/14/2007 | $1,179.98 | 08080 | Pmt To Statement Address | $491.80 | $688.18 | $60,122.68 |
| 06/18/2007 | 06/16/2007 | $00.00 | 03035 | Extension | $0.00 | $0.00 | $60,122.68 |
| 07/10/2007 | 07/11/2007 | $00.00 | 02662 | Pymt Assur Add | $0.00 | $0.00 | $60,122.68 |
| 07/10/2007 | 09/12/2007 | $00.00 | 02664 | Pymt Assur Cncl | $0.00 | $0.00 | $60,122.68 |
| 07/31/2007 | 09/12/2007 | $10.00 | 07011 | Late Charge | $0.00 | $0.00 | $60,122.68 |
| 08/01/2007 | 09/12/2007 | $10.00 | 08010 | Waive Late Chg | $0.00 | $0.00 | $60,122.68 |
| 08/02/2007 | 08/03/2007 | $1,189.98 | 08080 | Pmt To Statement Address | $214.85 | $975.13 | $59,907.83 |
| 08/08/2007 | 08/08/2007 | $10.00 | 08010 | Waive Late Chg | $0.00 | $0.00 | $59,907.83 |
| 08/08/2007 | 09/12/2007 | $10.00 | 09010 | Rev Late Chg | $0.00 | $0.00 | $59,907.83 |
| 08/17/2007 | 08/17/2007 | $1,179.98 | 08080 | Pmt To Statement Address | $888.48 | $291.50 | $59,019.35 |
| 09/18/2007 | 09/18/2007 | $1,179.98 | 08080 | Pmt To Statement Address | $566.37 | $612.63 | $58,452.98 |
| 10/15/2007 | 10/15/2007 | $1,270.28 | 08080 | Pmt To Statement Address | $758.32 | $511.96 | $57,694.66 |
| 11/16/2007 | 11/16/2007 | $1,080.66 | 08080 | Pmt To Statement Address | $481.78 | $598.88 | $57,212.88 |
| 12/27/2007 | 12/27/2007 | $1,180.00 | 08080 | Teller Pmt | $419.08 | $760.92 | $56,793.80 |
| 01/28/2008 | 01/28/2008 | $1,180.00 | 08080 | Teller Pmt | $591.82 | $588.18 | $56,201.98 |
| 02/29/2008 | 02/29/2008 | $1,180.00 | 08080 | Teller Pmt | $598.21 | $581.79 | $55,603.77 |
| 03/31/2008 | 03/31/2008 | $1,180.00 | 08080 | Teller Pmt | $622.37 | $557.63 | $54,981.40 |
| 05/01/2008 | 06/02/2008 | $10.00 | 07011 | Late Charge | $0.00 | $0.00 | $54,981.40 |
| 05/05/2008 | 05/05/2008 | $1,179.98 | 08080 | Teller Pmt | $557.38 | $622.52 | $54,424.02 |
| 05/05/2008 | 05/05/2008 | $00.10 | 08088 | Late Chg Paymnt | $0.00 | $0.00 | $54,424.02 |
| 05/31/2008 | 06/02/2008 | $1,179.98 | 08080 | Teller Pmt | $722.23 | $457.75 | $53,701.79 |
| 05/31/2008 | 06/02/2008 | $00.02 | 08088 | Late Chg Paymnt | $0.00 | $0.00 | $53,701.79 |
| 07/01/2008 | 07/01/2008 | $1,179.98 | 08080 | Teller Pmt | $641.44 | $538.54 | $53,060.35 |
| 07/01/2008 | 07/01/2008 | $00.02 | 08088 | Late Chg Paymnt | $0.00 | $0.00 | $53,060.35 |
| 07/31/2008 | 07/31/2008 | $10.00 | 07011 | Late Charge | $0.00 | $0.00 | $53,060.35 |
| 08/04/2008 | 08/04/2008 | $1,179.98 | 08080 | Teller Pmt | $596.37 | $583.61 | $52,463.98 |
| 08/04/2008 | 08/04/2008 | $00.02 | 08088 | Late Chg Paymnt | $0.00 | $0.00 | $52,463.98 |
| 09/02/2008 | 09/02/2008 | $1,179.98 | 08080 | Teller Pmt | $687.79 | $492.19 | $51,776.19 |
| 09/02/2008 | 09/02/2008 | $00.02 | 08088 | Late Chg Paymnt | $0.00 | $0.00 | $51,776.19 |
| 10/01/2008 | 10/01/2008 | $1,179.98 | 08080 | Teller Pmt | $694.25 | $485.73 | $51,081.94 |
| 10/01/2008 | 10/01/2008 | $00.02 | 08088 | Late Chg Paymnt | $0.00 | $0.00 | $51,081.94 |
| 10/31/2008 | 10/31/2008 | $10.00 | 07011 | Late Charge | $0.00 | $0.00 | $51,081.94 |
| 11/05/2008 | 11/05/2008 | $1,179.98 | 08080 | Teller Pmt | $601.61 | $578.37 | $50,480.33 |
| 11/05/2008 | 11/05/2008 | $00.02 | 08088 | Late Chg Paymnt | $0.00 | $0.00 | $50,480.33 |
| 12/01/2008 | 12/01/2008 | $10.00 | 07011 | Late Charge | $0.00 | $0.00 | $50,480.33 |
| 12/19/2008 | 12/19/2008 | $1,179.98 | 08080 | Teller Pmt | $461.45 | $718.53 | $50,018.88 |
| 12/19/2008 | 12/19/2008 | $00.02 | 08088 | Late Chg Paymnt | $0.00 | $0.00 | $50,018.88 |
| 12/31/2008 | 12/31/2008 | $10.00 | 07011 | Late Charge | $0.00 | $0.00 | $50,018.88 |
| 01/26/2009 | 01/26/2009 | $00.24 | 08089 | Teller Prin Pmt | $0.24 | $0.00 | $50,018.64 |
| 01/26/2009 | 01/26/2009 | $1,229.76 | 08080 | Teller Pmt | $613.77 | $615.99 | $49,404.87 |
| 02/02/2009 | 02/02/2009 | $10.00 | 07011 | Late Charge | $0.00 | $0.00 | $49,404.87 |
| 02/23/2009 | 02/23/2009 | $1,220.00 | 08080 | Teller Pmt | $771.27 | $448.73 | $48,633.60 |
| 03/03/2009 | 03/03/2009 | $10.00 | 07011 | Late Charge | $0.00 | $0.00 | $48,633.60 |
| 03/20/2009 | 03/20/2009 | $1,150.24 | 08080 | Teller Pmt | $755.84 | $394.40 | $47,877.76 |
| 03/20/2009 | 03/20/2009 | $69.76 | 08088 | Late Chg Paymnt | $0.00 | $0.00 | $47,877.76 |
| 03/31/2009 | 03/31/2009 | $10.00 | 07011 | Late Charge | $0.00 | $0.00 | $47,877.76 |
| 04/22/2009 | 04/22/2009 | $1,240.00 | 08080 | Non-Chase Bill Pmt | $727.49 | $512.51 | $47,150.27 |
| 04/27/2009 | 04/27/2009 | $00.00 | 03035 | Extension | $0.00 | $0.00 | $47,150.27 |
| 06/01/2009 | 06/01/2009 | $10.00 | 07011 | Late Charge | $0.00 | $0.00 | $47,150.27 |
| 06/24/2009 | 06/24/2009 | $10.00 | 07011 | Direct CK Fee | $0.00 | $0.00 | $47,150.27 |
| 06/24/2009 | 06/24/2009 | $10.00 | 08087 | Direct CK Pymnt | $0.00 | $0.00 | $47,150.27 |
| 06/24/2009 | 06/24/2009 | $1,179.98 | 08080 | CAF Direct Ck Pmt | $216.40 | $963.58 | $46,933.87 |
| 07/01/2009 | 08/11/2009 | $10.00 | 07011 | Late Charge | $0.00 | $0.00 | $46,933.87 |
| 07/27/2009 | 07/27/2009 | $10.00 | 07011 | Direct CK Fee | $0.00 | $0.00 | $46,933.87 |
| 07/27/2009 | 07/27/2009 | $10.00 | 08087 | Direct CK Pymnt | $0.00 | $0.00 | $46,933.87 |
| 07/27/2009 | 08/11/2009 | $10.00 | 09087 | Rev Misc | $0.00 | $0.00 | $46,933.87 |
| 07/27/2009 | 07/27/2009 | $1,179.98 | 08080 | CAF Direct Ck Pmt | $677.57 | $502.41 | $46,256.30 |
| 07/27/2009 | 08/11/2009 | $1,179.98 | 09080 | RTN PMT-INSUFF FUNDS | $677.57 | $502.41 | $46,933.87 |
| 07/31/2009 | 07/31/2009 | $1,200.00 | 08080 | Teller Pmt | $636.70 | $563.30 | $46,297.17 |
| 07/31/2009 | 08/11/2009 | $10.00 | 07011 | Late Charge | $0.00 | $0.00 | $46,297.17 |
| 08/31/2009 | 08/31/2009 | $10.00 | 07011 | Late Charge | $0.00 | $0.00 | $46,297.17 |
| 09/08/2009 | 09/08/2009 | $10.00 | 07011 | Direct CK Fee | $0.00 | $0.00 | $46,297.17 |
| 09/08/2009 | 09/08/2009 | $10.00 | 08087 | Direct CK Pymnt | $0.00 | $0.00 | $46,297.17 |
| 09/08/2009 | 09/08/2009 | $1,179.98 | 08080 | CAF Direct Ck Pmt | $594.27 | $585.71 | $45,702.90 |
| 10/01/2009 | 11/17/2009 | $10.00 | 07011 | Late Charge | $0.00 | $0.00 | $45,702.90 |
| 10/02/2009 | 10/02/2009 | $10.00 | 07011 | Direct CK Fee | $0.00 | $0.00 | $45,702.90 |
| 10/02/2009 | 10/02/2009 | $10.00 | 08087 | Direct CK Pymnt | $0.00 | $0.00 | $45,702.90 |
| 10/02/2009 | 10/13/2009 | $10.00 | 09087 | Rev Misc | $0.00 | $0.00 | $45,702.90 |
| 10/02/2009 | 10/02/2009 | $1,179.98 | 08080 | CAF Direct Ck Pmt | $824.18 | $355.80 | $44,878.72 |
| 10/02/2009 | 10/13/2009 | $1,179.98 | 09080 | RTN PMT - OTHER | $824.18 | $355.80 | $45,702.90 |
| 10/14/2009 | 10/14/2009 | $10.00 | 07011 | Direct CK Fee | $0.00 | $0.00 | $45,702.90 |
| 10/14/2009 | 10/14/2009 | $10.00 | 08087 | Direct CK Pymnt | $0.00 | $0.00 | $45,702.90 |
| 10/14/2009 | 10/22/2009 | $10.00 | 09087 | Rev Misc | $0.00 | $0.00 | $45,702.90 |
| 10/14/2009 | 10/14/2009 | $1,179.98 | 08080 | CAF Direct Ck Pmt | $646.28 | $533.70 | $45,056.62 |
| 10/14/2009 | 10/22/2009 | $1,179.98 | 09080 | RTN PMT - OTHER | $646.28 | $533.70 | $45,702.90 |
| 10/23/2009 | 10/23/2009 | $1,189.00 | 08080 | Teller Pmt | $521.86 | $667.14 | $45,181.04 |

# CHASE ◯

April 4, 2013

Ms. Tanganyika Gwinn
69 Congress Street # C
Hartford, CT 06112

Re:  Account Ending In 2403

Dear Ms. Gwinn:

Thank you for your March 27, 2013, correspondence to JPMorgan Chase Bank, N.A. ("Chase") regarding your account ending in 2403. Our goal is to provide you with the highest level of service, so I appreciate this opportunity to address your concerns.

In your correspondence, you requested that Chase provide you with documentation validating the debt owed, proof that the account has not been paid in full and that it has charged off. You additionally stated that Chase is inaccurately reporting negative information about your account.

On May 9, 2007, you entered into a Retail Installment Contract ("Contract") with New Country Motor Cars, Inc. of Hartford, CT to finance a 2006 BMW, which was subsequently assigned to Chase. The terms of the agreement are 72 payments of $1,179.98 due on the 8th of each month, beginning on June 8, 2007. Copies of the contract and payment history are enclosed for your review. Please know that together these documents validate the reporting of the original tradeline and the debt owed to Chase.

Our records indicate that your account fell into payment default and in accordance with regulatory guidelines, the account was charged off on September 28, 2012, in the amount of $20,482.23. Due to the charge off, your account balance was accelerated, meaning that it became due in full. The enclosed payment history reflects the account charge off. Please understand that failure to remit balance in full can result in repossession of the vehicle in accordance with the terms of your contract.

If after reviewing the enclosed payment history, you feel that a payment was not applied to your account, please fax a copy of the cancelled check, front and back, to 1-866-535-3403 so we may properly credit your account. This information can also be mailed to the following address:

> Chase Auto Finance Executive Office
> Attention:  Nailah M. Dawson
> 900 Stewart Avenue, 5th Floor
> Garden City, NY 11530

If you wish to pay off your above referenced loan account, Chase will only accept payment in the form of personal checks, cashiers checks, money orders and cash payments made at a Chase branch.

In response to your claim that Chase has reported negative information on the account, please understand that Chase, in accordance with applicable laws and regulations, is required to report accurate account activity to the credit reporting agencies, Experian, Equifax and TransUnion, based on your record of payment. Please be advised that unless we are reporting inaccurate information, we are unable to change our reporting. We have confirmed with the credit bureaus that your account is reporting accurately as charged off. Therefore, it is our position that your contract with Chase is valid and enforceable, and you remain bound under the terms of the agreement.

This is an attempt to collect a debt. Any information obtained will be used for that purpose.

**JPMorgan Chase Bank, N.A. · Chase Auto Finance · NY2-5502, 900 Stewart Avenue, Garden City, NY 11530**



September 20, 2012

Ms. Tanganyika Gwinn
959 Saint Mark Avenue, Apartment 4F
Brooklyn, NY 11213

Re: Account Ending In 2403

Dear Ms. Gwinn:

I am writing in regard to your recent correspondence addressed to Mr. Jamie Dimon which was received in our office on September 14, 2012 and forwarded to me for reply. In it, you state that you have been unsuccessful in modifying your auto loan with JPMorgan Chase Bank, N.A. ("Chase") and that you were under the impression that if you made a large down payment, you would receive an extended warranty, lower interest rate and lower monthly payment. You also state that your dealer advised if you made timely payments for six months, you could apply with your lender for a loan modification to reduce your interest and monthly payment. In addition, you are now requesting a reduction in your monthly payments to $600.00 per month. I welcome the opportunity to be of assistance.

Our records indicate that you entered into a Retail Installment Contract ("Contract") with New Country Motor Cars, Inc., ("Dealership"), on May 9, 2007 for the purchase of a 2006 BMW in the amount of $60,614.48. The term of the contract was for 72 months with a monthly payment of $1,179.98 due on the 8th of each month; with the first payment being due on June 8, 2007. I have enclosed a copy for your reference.

Please know that as assignee, Chase does not have knowledge of the specifics of the sale between you and the Dealership other than what is provided on the funded contract. The negotiation of the terms of the contract, including the payment amount and interest rate, occurred between you and the dealer prior to Chase purchasing the contract. While a greater down payment reduces the overall loan amount and therefore, can reduce the amount of the monthly payment, the interest rate that Chase will accept is dependent upon on a number of factors, including credit information contained in a consumer's credit report.

In response to your assumption that you would receive a warranty, new vehicle warranties are provided by the manufacturer. Extended service contracts are available for purchase. Both new vehicle warranties and extended service contracts are unrelated to the down payment amount. Our records show that you did not finance an extended service agreement. In regard to information you received from the Dealership, Chase is aware that the Dealership is no longer in business, and therefore we have insufficient information to either support or deny the claims you have made regarding information that you received from the Dealership. Unfortunately, Chase does not have a loan modification program that would enable us to modify the terms of your loans to reduce your monthly payment.



September 20, 2012
Ms. Tanganyika Gwinn
Re:  Account Ending In 2403
Page 2

In regards to the collection calls you have received, we regret that you perceived our attempts to resolve this matter to be anything less than professional. Chase considers providing outstanding service to our customers a top priority. Please keep in mind, when an account is past due, it is our goal to contact our customer, determine the reason for the delinquency and discuss payment options.  It is our intention to bring the account to a current status and stop the account from becoming further delinquent, which may affect the customer's credit rating. Although payment reminder calls are part of our business practices, and are in accordance with regulatory guidelines, we regret if you felt inconvenienced by these calls. If you would like Chase to discontinue collection calls, we must receive your request in writing to do so. You may fax your request to my attention to 1-866-535-3403 or you may send your request to the following address:

Chase Auto Finance Executive Office
Attention: Cindy Corrado
900 Stewart Avenue, Fifth Floor
Garden City, New York 11530

In addition, our records also indicate that you did submit applications to refinance your loan in May 2008 and in April 2012.  The applications were subsequently denied. Letters advising you of our decline decision were sent to your address of record at that time.

Ms. Gwinn, if you wish to discuss possible payment options or arrangements, we ask that you please contact Ms. Latonna Lamar, Collection Supervisor, directly at 1-813-584-3462.  If I may be of assistance with another matter related to your account, please contact me at 1-800-643-1599, extension 229-2012.

Sincerely,

*Cindy Corrado*

Cindy Corrado
Executive Specialist
Chase Auto Finance Executive Office

cc:  Annemarie DeTommaso, Vice President

Enclosure

... RETAIL INSTALLMENT CONTRACT

Date | 05/09/07

If this box is checked, this is a simple interest contract **WITH** a "Balloon Payment" as the last scheduled payment. If this box is not checked, this is a simple interest contract **WITHOUT** a "Balloon Payment" as the last scheduled payment.

| Buyer (and Co-Buyer) Name(s) and Address(es) (Include County and Zip Code) ARREARA TIME GMTMM | Seller (Creditor) Name and Business Address |
|---|---|
| 69 CONGRESS ST #C<br>HARTFORD CT 06112 | NEW COUNTRY MOTOR CARS, INC.<br>1 WESTON PARK ROAD<br>HARTFORD, CT              06120 |

2. **WHO IS BOUND:** You, the Buyer (and Co-Buyer, if any), may buy the vehicle described below for cash or on credit. By signing below, you choose to buy the vehicle on credit under the terms on the front and back of this Contract and are individually liable (jointly and severally if both a Buyer and Co-Buyer sign below) for any amount due. In this Contract, "we," "us," and "our" mean the Seller named above and, after assignment and acceptance, the Seller's assignee, JPMorgan Chase Bank, N.A., acting on its own or as an agent for an affiliated entity (and any subsequent assignee).

3. **DESCRIPTION OF VEHICLE:** You agree to buy and we agree to sell the following vehicle:

| New, Used or Demo | Year | Weight (lbs.) | Make and Model | Body Type | Vehicle Identification No. | Key No. | Primary Use for Which Purchased |
|---|---|---|---|---|---|---|---|
| NEW | 06 | | BMW | | WBALH13406CR51161 | | personal, family<br>or household<br>business<br>agricultural |

If truck – Describe body, gross vehicle weight and major items of equipment sold:

NOTICE TO BUYER OF USED OR DEMONSTRATION VEHICLES: The information you see on the window form for this vehicle is part of

**PREPAYMENT:** You have the right to pay off this Contract early. If you do so, you will not have to pay a penalty.

**SECURITY:** You are giving us a security interest in the vehicle being purchased.

**LATE FEE:** If a payment is more than 10 days late, you will pay us the lesser of $10 or 5% of the unpaid amount of that payment.

**OTHER TERMS:** Please read this Contract, including the reverse side, for additional information on security interests, nonpayment, default, and our right to require repayment in full before the scheduled maturity date.

## 6. ITEMIZATION OF THE AMOUNT FINANCED

| | | |
|---|---|---|
| 1. Cash Price (including any accessories, installation of accessories, and taxes): | $ | 59194.48 |
| 2. Downpayment: | | |
| A. Net Trade-in: | $ | N/A |
| Your Trade-in is a   06   DODGE   CHARGER | | |
| Year   Make   Model | | |
| B. Cash Downpayment: | $ | 9500.00 |
| C. Total Downpayment (A + B): | $ | 9500.00 |
| 3. Unpaid Balance of Cash Price (1 − 2C): | $ | 59694.48 |
| 4. Other Charges Including Amounts Paid to Others on Your Behalf: | | |
| A. Cost of Optional Credit Insurance for the Term(s) Specified in Paragraph 10 of this Contract Paid to the Insurance Company Named in Paragraph 10: | $ | N/A |
| Life $ _____   Disability, Accident and Health  $ _____   N/A | | |
| B. Official Lien Fees Paid to Government Agencies: | $ | N/A |
| C. Government License and/or Registration Fees (Itemize): | $ | 135.00 |
| | $ | 35.00 |
| D. Government Certificate of Title Fees: | $ | 750.00 |
| E. Other Charges (Describe who will receive payment and purpose) | | |
| To _____ N/A _____   For Optional Gap Coverage | $ | N/A |
| To _____   For _____ | $ | N/A |
| To _____   For _____ | $ | ** |
| F. Total Other Charges and Amounts Paid to Others on Your Behalf (A + B + C + D + E): | $ | 920.00 |
| 5. Amount Financed  (Unpaid Balance) (3 + 4F): | $ | 60614.48 |
| ** We may retain, or receive, a portion of these amounts. | | |

I request Optional Gap coverage under the terms in Section 16 and for the amount shown in Section 4E. If no amount is shown and you have not received a copy of a Gap waiver or insurance policy, there is no Gap coverage.

Buyer's and Co-Buyer's Initials
X                    X

**7. PROMISE TO PAY:** You promise to pay us the Amount Financed shown above, plus a Finance Charge determined by applying a daily rate of 1/365th (1/366th in a leap year) of the Annual Percentage Rate shown above to the unpaid balance of the Amount Financed each day.

**8. PAYMENTS BEFORE OR AFTER DUE DATE: This is a simple interest contract. This means that the amount of the Finance Charge shown above may vary depending upon when your payments are received.** If no late fee and/or return check charge is owed, we credit each payment first to accrued Finance Charge and then to the unpaid balance of the Amount Financed. If a late fee and/or return check charge is owed, we credit each payment first to accrued Finance Charge, then to the scheduled unpaid balance of the Amount Financed, then to unpaid late fee and/or return check charge, and then to the unpaid balance of the Amount Financed. We compute your Finance Charge each day on the unpaid balance of the Amount Financed. The earlier you make payments before their due dates, the less Finance Charge you will owe. The later you make payments after they are due, the greater the Finance Charge, the Total of Payments and the Total Sale Price. If you make any payments after they are due, including if we allow you to extend the term of this Contract, your final payment may be higher than originally scheduled. We will send you a check for any amount we owe you after you make your last payment (if it is $1.00 or more). We will advise you of any additional amount you owe us (if it is $1.00 or more).

**9. BALLOON PAYMENT:** IF THIS CONTRACT IS CHECKED WITH "BALLOON PAYMENT" ABOVE, THIS PARAGRAPH APPLIES. THIS CONTRACT IS NOT PAYABLE IN INSTALLMENTS OF EQUAL AMOUNTS. THE LAST SCHEDULED PAYMENT IS SUBSTANTIALLY LARGER THAN EACH OF THE OTHER SCHEDULED PAYMENTS. The due date and amount of this last scheduled payment are shown above. Paragraph 12 applies and the following are the readings and/or charges referred to in Paragraph 12: the (1) maximum allowable odometer reading is _____ ; (2) charge per each excess mile over the maximum allowable mileage is _____ ; and (3) disposition fee is _____ .

**10. OPTIONAL CREDIT INSURANCE:** Credit life and credit disability, accident and health insurance are not required to obtain credit and will not be provided under this Contract unless you sign for them and agree to pay the additional cost. The policies or certificates issued by the insurer will describe the terms and conditions in further detail.

If you want the following insurance, sign below:

☐ Life   (☐ Buyer   ☐ Co-Buyer   ☐ Both) at a premium of $ _____   for a term of _____ 

Credit life insurance will pay your debt on this Contract up to $ _____

☐ Disability, Accident and Health (Buyer Only) at a premium of $ _____   for a term of   72

Credit disability, accident and health insurance will pay your debt on this Contract up to $ _____

The name of the insurer is _____   of _____

Name                                         Home Office Address

X _____                    X _____
Buyer's Signature        Date   Co-Buyer's Signature                 Date

**11. REQUIRED PROPERTY INSURANCE:** Insurance coverage for loss or damage to the vehicle (collision, fire and theft) is required. You have the option of furnishing the required insurance either through your existing policies or by purchasing equivalent insurance coverage through anyone you wish who is acceptable to the Seller. If you elect to purchase this coverage through the Seller, it will be furnished by _____ for the initial term of _____ at a premium of _____ but such charge is not included in this Contract.

**IMPORTANT: READ THE ADDITIONAL TERMS ON REVERSE SIDE BEFORE SIGNING BELOW.**

**The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this Contract and retain its right to receive a part of the Finance Charge.**

**BY SIGNING THIS CONTRACT, YOU ACKNOWLEDGE THAT IT CONTAINS AN "AGREEMENT TO ARBITRATE DISPUTES" ON THE REVERSE SIDE, THAT YOU HAVE READ IT AND AGREE TO ITS TERMS.**

> **WARNING: Any insurance provided by the Seller does not cover liability for injury to persons or damage to property of others indicated in the policy.**

**ACKNOWLEDGEMENT:** You acknowledge that you have received a copy of this Contract with all blanks filled and that you have read it and that you understand it. You further acknowledge that, to the extent any payments under this Contract are deferred, you have been informed on the reverse side of this Contract of the consequences of failing to make a deferred first monthly payment (and any other deferred monthly payment) when due.

**NOTICE TO THE BUYER: 1.** Do not sign this Contract before you read it or if it contains any blank space. **2.** You are entitled to a completely filled-in copy of the Contract when you sign it. **3.** Under the law, you have the following rights, among others: (a) to pay off in advance the full amount due and obtain a partial refund of any unearned finance charge; (b) to redeem the property if repossessed for a default; (c) to require, under certain conditions, a resale of the property if repossessed.

Buyer Signs X _____                    Co-Buyer Signs X _____

By signing here, the Seller agrees to the terms of this Contract and assigns this Contract to Seller's assignee under the terms agreed to by Seller and Seller's assignee.

Seller (Creditor) Signs X _____                    Title _____

**RETAIL INSTALLMENT CONTRACT**

**1. NATURE OF CONTRACT:** ☐ If this box is checked, this is a simple interest contract WITH a "Balloon Payment" as the last scheduled payment. If this box is not checked, this is a simple interest contract WITHOUT a "Balloon Payment" as the last scheduled payment.

| Buyer (and Co-Buyer) Name(s) and Address(es) | Seller (Creditor) Name and Business Address |
|---|---|
| ARGELIA TORUÑO<br>69 CONGRESS ST #C<br>HARTFORD CT 06112 | NEW COUNTRY MOTOR CARS, INC.<br>1 WESTON PARK ROAD<br>HARTFORD, CT        06120 |

**2. WHO IS BOUND:** You, the Buyer (and Co-Buyer, if any), may buy the vehicle described below for cash or on credit. By signing below, you choose to buy the vehicle on credit under the terms on the front and back of this Contract and are individually liable (jointly and severally if both a Buyer and Co-Buyer sign) toward its payment due. In this Contract, "we," "us," and "our" mean the Seller named above and, after assignment and acceptance, the Seller's assignee. JPMorgan Chase Bank, N.A., acting on its own or as agent for an affiliated entity (and any subsequent assignee).

**3. DESCRIPTION OF VEHICLE:** You agree to buy and we agree to sell the following vehicle:

| New, Used or Demo | Year | Weight (lbs.) | Make and Model | Body Type | Vehicle Identification No. | Key No. | Primary Use for Which Purchased |
|---|---|---|---|---|---|---|---|
| NEW | 06 | | BMW | | WBAEH13406CR51151 | | ☐ Personal, family (or household)<br>☐ business<br>☐ agricultural |

If truck – Describe body, gross vehicle weight and major items of equipment sold:

**4. NOTICE TO BUYERS OF USED OR DEMONSTRATION VEHICLES:** The information you see on the window form for this vehicle is part of this Contract. Information on the window form overrides any contrary provisions in the contract of sale.

**5. FEDERAL TRUTH-IN-LENDING DISCLOSURES**

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | AMOUNT FINANCED<br>The amount of credit provided to you or on your behalf. | TOTAL OF PAYMENTS<br>The amount you will have paid after you have made all payments as scheduled. | TOTAL SALE PRICE<br>The total cost of your purchase on credit, including your downpayment of $9500.00 |
|---|---|---|---|---|
| 11.84 % | $ 24344.08 | $ 60614.48 | $ 84958.56 | $ 94458.55 |

**YOUR PAYMENT SCHEDULE WILL BE:**

| Number Of Payments | Amount Of Payments | When Payments Are Due |
|---|---|---|
| 72 | 1179.98 | Monthly, beginning   06/08/07 |

**PREPAYMENT:** You have the right to pay off the Contract early. If you do so, you will not have to pay a penalty.

**SECURITY:** You are giving us a security interest in the vehicle being purchased.

**LATE FEE:** If a payment is more than 10 days late, you will pay us the lesser of $10 or 5% of the unpaid amount of that payment.

**OTHER TERMS:** Please read this Contract, including the reverse side, for additional information on security interests, nonpayment, default, and our right to require repayment in full before the scheduled maturity date.

**6. ITEMIZATION OF THE AMOUNT FINANCED**

| | | |
|---|---|---|
| 1. Cash Price (including any accessories, installation of accessories, and taxes) | | $ 69134.48 |
| 2. Downpayment: | | |
| A. Net Trade-in | $ N/A | |
| Your Trade-in is a   06  DODGE   CHARGER | | |
| B. Cash Downpayment | $ 9500.00 | |
| C. Total Downpayment (A + B): | | 9500.00 |
| 3. Unpaid Balance of Cash Price (1 – 2C): | | 59694.48 |
| 4. Other Charges Including Amounts Paid to Others on Your Behalf: | | |
| A. Cost of Optional Credit Insurance for the Term(s) Specified in Paragraph 10 of this Contract Paid to the Insurance Company Named in Paragraph 10: | | |
|   Life $ N/A   Disability, Accident and Health $ N/A | | N/A |
| B. Official Lien Fees Paid to Government Agencies: | | N/A |
| C. Government License and Registration Fees (Itemize): | | 135.00 |
| D. Government Certificate of Title Fees: | | 35.00 |
| E. Other Charges (Describe who will receive payment and purpose) | | |
|   To ____ N/A ____ For Optional Gap Coverage N/A | | 750.00 |
|   To ____ N/A ____ For | | N/A |
|   To ____ ____ For | | |
| F. Total Other Charges and Amounts Paid to Others on Your Behalf (A + B + C + D + E): | | 920.00 |
| 5. Amount Financed (Unpaid Balance) (3 + 4F): | | 60614.48 |

**7. PROMISE TO PAY:** You promise to pay us the Amount Financed shown above, plus a Finance Charge determined by applying a daily rate of 1/365th (1/366th in a leap year) of the Annual Percentage Rate shown above to the unpaid balance of the Amount Financed each day.

**10. OPTIONAL CREDIT INSURANCE:** Credit life and credit disability, accident and health insurance are not required to obtain credit and will not be provided unless the Contract unless you sign for them and agree to pay the additional cost.

**IMPORTANT: READ THE ADDITIONAL TERMS ON REVERSE SIDE BEFORE SIGNING BELOW.**

The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this Contract and retain its right to receive a part of the Finance Charge.

BY SIGNING THIS CONTRACT, YOU ACKNOWLEDGE THAT IT CONTAINS AN "AGREEMENT TO ARBITRATE DISPUTES" ON THE REVERSE SIDE, THAT YOU HAVE READ IT AND AGREE TO ITS TERMS.

**WARNING:** Any insurance provided by the Seller does not cover liability for injury to persons or damage to property of others unless indicated in the policy.

[Fine print paragraphs — partially legible]

- The manufacturer's maintenance schedule has not been met.
- The vehicle will not pass any inspection to which it is or will be subject;
- The vehicle does not have 4 undamaged matching tires (no retreads), plus a spare tire, all comparable in quality to original equipment, with at least 1/8th inch tread on each tire at its lowest point;
- The owner's manual or maintenance schedule is missing;
- The vehicle is not returned with the same or comparable equipment and accessories (including jack and wheel wrench) in working order, as installed at time of delivery;
- There are rips, tears, burns, soiling or excessive wear to the carpet, seats, doors, headliner or dashboard or in the trunk area;
- There are scratches, dents, hail, rust areas, misalignment of paint or cracks in the fenders, bumpers, grill, roof, hood, trunk or doors, other body damage or improper repairs;
- The vehicle has been repainted in other than its original color;
- The engine, drive train or other mechanical, safety and electrical parts do not operate properly;
- There are any special identifications, markings or modifications anywhere on or in the vehicle;
- The windows, lenses or lights are cracked or broken;
- Damage has resulted from flood water, hail, sand, excessive use, abuse, misuse, negligence or accident.

13. OWNERSHIP AND RISK OF LOSS: [...]

14. SECURITY INTEREST: [...]

15. REQUIRED INSURANCE: [...]

16. OPTIONAL GUARANTEED AUTO PROTECTION (GAP) COVERAGE: [...]

17. INSURANCE CHARGES RETURNED TO US: [...]

18. DEFAULT: [...]

19. REPOSSESSION AND REDEMPTION OF THE VEHICLE: [...]

20. SALE OF THE REPOSSESSED VEHICLE: [...]

21. COLLECTION OR ENFORCEMENT COSTS: [...]

22. RETURN CHECK CHARGE: [...]

23. DELAY IN ENFORCING RIGHTS AND CHANGES OF THIS CONTRACT: [...]

24. WARRANTIES SELLER DISCLAIMS: [...]

25. RIGHT TO SUE: [...]

26. ASSIGNMENT: [...]

27. GOVERNING LAW: This Contract is governed by the applicable laws of the State of Connecticut, to the extent that such laws are not preempted by the laws of the United States.

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

The preceding NOTICE applies only to goods or services obtained primarily for personal, family, or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this Contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this Contract.

If you have chosen to defer your first monthly payment under this Contract, you will owe the Finance Charges on the unpaid Amount Financed beginning from the date of this Contract at the Annual Percentage Rate shown on the reverse side, even though your first monthly payment due date has been deferred. If you fail to make your deferred first (or any other) monthly payment on time, you will continue to owe Finance Charges on the unpaid Amount Financed beginning from the date of this Contract, and we may also exercise our rights described in this Contract, including (for example) the right to assess late fees, require payment in full of all amounts due under the Contract and the right to repossess the vehicle that secures repayment of this Contract.

AGREEMENT TO ARBITRATE DISPUTES

The following Arbitration Agreement can significantly affect your rights in any dispute with us. Please read it carefully before signing this Contract.

1. IF EITHER OF US CHOOSES, ANY CLAIM OR DISPUTE BETWEEN US (AS DEFINED BELOW) WILL BE DECIDED BY ARBITRATION AND NOT IN COURT OR BY A JURY TRIAL.

2. IF EITHER OF US CHOOSES TO ARBITRATE, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS OR OTHER REPRESENTATIVE ON BEHALF OF OTHER PERSONS OR AS A CLASS MEMBER OR OTHER REPRESENTED PERSON IN ANY CLASS CLAIM OR OTHER REPRESENTATIVE TYPE OF CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS OR OTHER REPRESENTATIVE ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.

3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this clause, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arise out of or relate to your credit application, this Contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class or other representative type of action. You expressly waive any right you may have to arbitrate a class or other representative type of action. You may choose any one of the following arbitration organizations: the American Arbitration Association, 335 Madison Ave., Floor 10, New York, NY 10017-4605 (www.adr.org), or the National Arbitration Forum, Box 50191, Minneapolis, MN 55405-0191 (www.arb-forum.com). The arbitration shall be conducted in accordance with the Arbitration Agreement and, unless otherwise provided in the Agreement to Arbitrate Disputes, the rules of the arbitration organization you chose (the "Arbitration Rules"). You may get a copy of the Arbitration Rules by contacting the arbitration organization or visiting its website.

The arbitrator shall be an attorney or retired judge selected in accordance with the Arbitration Rules. The arbitrator shall apply governing substantive law in making an award. The arbitration hearing shall be conducted in the federal district in which you reside. The arbitrator's decision shall be in writing and either party may appeal the arbitrator's decision through the arbitration organization you chose. We will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $1,500. We will also pay any additional amount of such fees that the arbitrator determines we must pay in order to make this Agreement to Arbitrate Disputes enforceable. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. The arbitrator's award shall be final and binding on all parties, except that the losing party may request a new arbitration if allowed by the Arbitration Rules. This Agreement to Arbitrate Disputes, and any arbitration conducted hereunder, shall be governed by the Federal Arbitration Act (9 U.S.C. § et seq.) and not by any state law concerning arbitration.

You and we retain any rights to self-help remedies, such as repossession. You and we retain the right to seek individual remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies or filing suit. Any court having jurisdiction may enter judgment on the arbitrator's award. This agreement shall survive any termination, payoff or transfer of this Contract. If any part of this Agreement to Arbitrate Disputes, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable.

# COUNTRY MOTOR CARS

One Weston Park Road • Hartford, CT 06120
Tel. (860) 522-6134 • Fax (860) 549-8667
www.newcountry.com

| SALESPERSON | | DATE |
|---|---|---|
| BUYER | CARTER, JEFFREY | 05/09/07 |
| ADDRESS | TANGANYIKA GWINN | |
| CITY / STATE / ZIP | 59 CONGRESS ST #C | |
| HOME # | HARTFORD CT 06112 | BUSINESS # | CELLULAR PHONE |
| EMAIL | | |

## THE TRANSACTION

I ORDER AND AGREE TO PURCHASE FROM YOU, ON THE TERMS CONTAINED ON BOTH SIDES OF THIS AGREEMENT, THE FOLLOWING VEHICLE (READ OTHER SIDE)

| CO-BUYER | 1293-1228 |
|---|---|
| ADDRESS | |
| CITY / STATE / ZIP | |
| HOME # | | BUSINESS # | CELLULAR PHONE |
| EMAIL | |

## THE VEHICLE

NEW ☐ USED ☐ DEMONSTRATOR ☐ FORMER ☐ MANAGEMENT

| MAKE | BMW | YEAR 06 | STOCK NO. B4123 |
| BODY TYPE | | MODEL 650I CPE | CYL |
| COLOR WHITE | TOP COLOR | TRIM COLOR | ACCENT COLOR |
| CODE | CODE | CODE | CODE |

VIN DE

| DAY 05/09/07 | TIME | MILEAGE 4 9 6 5 |

## PRICE

| VEHICLE PRICE | $ | 66320.00 |
|---|---|---|
| TRANSPORTATION (IF NOT INCLUDED IN VEHICLE PRICE) | + | |
| FACTORY INSTALLED EQUIPMENT | + | |
| OPTION CODE | | |

## THE TRADE

| YEAR 05 | MAKE DODGE |
| MODEL CHARGER | BODY TYPE SD |
| COLOR | MILEAGE 28453 |

VIN 2 B 3 K A 4 3 G X 6 H 2 2 6 4 8

| PLATE NO. | EXP. DATE | NEED PLATES? ☐ |

DEALER INSTALLED EQUIPMENT

## BRING WITH YOU AT TIME OF DELIVERY:
**PLEASE**
☐ TITLE ON CAR TRADED       ☐ C.O.D. ON VEHICLE
☐ CURRENT REGISTRATION      IN THE AMOUNT OF:
☐ INSURANCE CARD            $

**FINAL PAYMENT CASH OR CERTIFIED CHECK**

| GAP PROTECTION | 750.00 |
|---|---|
| LOJACK | |
| ENVIRONMENTAL PROTECTION PLAN | |
| OPTIONAL VIN ETCHING | |
| EXTENDED SERVICE WARRANTY | |

## INSURANCE

| INS. AGT. | | PHONE |
| ADDRESS | | |
| INS. CO. | | |
| POL. NO. | | INS. NOT HELD (USED) |

## TAXES AND OTHER FEES

| SUBTOTAL OF VEHICLE AND OPTIONS | $ | 67070.00 |
|---|---|---|
| TRADE-IN ALLOWANCE | – | 23695.29 |
| DEALER CONVEYANCE FEE: | + | 299 00 |

**DEALER CONVEYANCE FEE IS NOT PAYABLE TO THE STATE OF CT.**

| | TAXABLE CASH DIFFERENCE | 43674.71 |
|---|---|---|
| COUNTY | SALES TAXES AT 6.0 % | 2575.48 |

LUXURY TAX (IF APPLICABLE)

| LIC. | REG. | TRANS. | TITLE | LIEN |
|---|---|---|---|---|
| | 135.00 | | 25.00 | 10.00 | 170.00 |

| TOTAL SELLING PRICE | 46420.19 |
|---|---|
| PLUS BALANCE OWING ON TRADE-IN | + 23695.29 |
| NET | 70114.48 |

## ☐ THIS MOTOR VEHICLE NOT GUARANTEED

THIS MOTOR VEHICLE IS NOT GUARANTEED BY THE DEALER.

THIS MOTOR VEHICLE IS SOLD WITH A LIMITED WARRANTY FROM THE VEHICLE'S MANUFACTURER FOR A PERIOD OF 48 MONTHS OR 50000 MILES, WHICHEVER OCCURS FIRST, BEGINNING FROM THE

☐ IN SERVICE DATE   ☐ DELIVERY DATE

DATE: _____

*$3,000 OR MORE BUT LESS THAN $5,000*

## ☐ THIS MOTOR VEHICLE IS GUARANTEED TO BE
MECHANICALLY OPERATIONAL AND SOUND FOR A PERIOD OF 30 DAYS OR 1,500 MILES WHICHEVER PERIOD ENDS FIRST. THIS GUARANTEE SHALL INCLUDE THE FULL COST OF BOTH PARTS AND LABOR. ALL LABOR MUST BE PERFORMED IN OUR SHOP. NO OUTSIDE INVOICE FOR REPAIRS CAN BE HONORED BY US.

*$5,000 OR MORE*

## ☐ THIS MOTOR VEHICLE IS GUARANTEED TO BE
MECHANICALLY OPERATIONAL AND SOUND FOR A PERIOD OF 60 DAYS OR 3,000 MILES WHICHEVER PERIOD ENDS FIRST. THIS GUARANTEE SHALL INCLUDE THE FULL COST OF BOTH PARTS AND LABOR. ALL LABOR MUST BE PERFORMED IN OUR SHOP. NO OUTSIDE INVOICE FOR REPAIRS CAN BE HONORED BY US.

## ☐ OTHER
THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

IF THE VEHICLE BEING ORDERED IS IN HIGH DEMAND AND LIMITED SUPPLY, PURCHASER MAY BE REQUIRED TO EXECUTE A REPURCHASE AND SECURITY AGREEMENT.

"I HAVE READ THE TERMS ON THE FRONT AND BACK OF THIS AGREEMENT, INCLUDING THE ARBITRATION PROVISION, AND HAVE RECEIVED A COMPLETED COPY OF THIS AGREEMENT. THIS AGREEMENT IS NOT BINDING UNTIL SIGNED BY THE SELLER AND THE BUYER."

| BUYER'S SIGNATURE | DATE 05/09/07 |
| CO-BUYER'S SIGNATURE | DATE 05/09/07 |
| ACCEPTED BY | DATE 05/09/07 |

| LESS DEPOSIT SUBMITTED WITH ORDER | | |
|---|---|---|
| RECEIPT # | | 4500.00 |
| ☐ CC ☐ CASH ☐ CHECK | | |

**Conditional Refund of Deposit.** Deposits are non-refundable, unless we are unable to obtain financing on your behalf as verified by a signed credit application.

| UNPAID BALANCE DUE | 5000.00 |
|---|---|
| ANNUAL PERCENTAGE RATE | 11.84 |
| AMOUNT FINANCED | 66614.48 |
| FINANCE CHARGE | 24344.08 |

No insurance is included in this charge, except as indicated below:
Creditor Insurance for term loan* _____ VSI FEE
  *Seller does not require this insurance
Credit Insurance Desired:
☐ Life ☐ Disability (Accident & Health) ☐ Other

| TOTAL PAYMENTS | 84958.56 |
|---|---|
| TOTAL SALE PRICE | |

ALL QUOTED APR% AND PAYMENTS ARE SUBJECT TO BUYERS/CO-BUYERS CREDIT APPROVAL
BY     JPMORGAN CHASE BAN   (BANK) AT TIER I

The Reynolds and Reynolds Company  PUG087010 (4/07)

# 5 Star Preferred          GAP Addendum          FP47 146889

This Guaranteed Automobile Protection (GAP) Contract Addendum (addendum) dated 05/09/07 amends the financing contract. This GAP addendum is between the customer/borrower and the dealer/creditor (we, us, or our), or if assigned with the assignee.

| | |
|---|---|
| Customer/Borrower TANGANYIKA GWINN | Dealer/Creditor NEW COUNTRY MOTOR CARS, INC. |
| Address 89 CONGRESS ST #6 | Address WESTON PARK ROAD |
| City, State HARTFORD CT 06112 | City, State, Zip HARTFORD  CT 06120 |
| Vehicle Make/Model BMW   650I CPE   06 | VIN WBAEH13406CR51161 |
| Date of Financing Contract 05/09/07 | Term of GAP                     Monthly Pymt. 1179.98 |
| | Term of Loan 2          Maximum Term of GAP: 84 Mos. |
| Financial Institution/Lender MORGAN CHASE BANK NA | MSRP/NADA:                 Maximum Eligibility Limit % 150% |
| Address PO BOX 901098 | Amount Financed 60614.48 |
| City FORT WORTH | State TX          Zip 76101-20 |
| ☐ Balloon   ☐ Lease   ☐ Installment Sales Contract | Mileage 4066          CLASS |
| | For Administrative Purpose |

Although not required to do so, you have elected to participate in our GAP Program. **GAP does not take the place of insurance on the vehicle.** You are responsible for maintaining collision and comprehensive insurance for the full value of the vehicle and any other insurance required by the financing contract or applicable law. You are responsible for all notifications or claims that are required to be filed with your automobile insurance company. We will not process or handle your insurance claims for you.

**The Charge to You for GAP is $**

In the event of a constructive total loss to the covered vehicle, we agree to waive our rights against you for the amount due under a payable loss. In addition to the provisions of payable loss, you will remain responsible for payment of any items stated under Exclusions.

**TERMINATION OF ADDENDUM:** This addendum will terminate on the date that either of the following events occur: 1. the date your financing contract is scheduled to terminate; 2. upon payment in full of the financing contract; 3. expiration of any redemption period following the repossession or surrender of the covered vehicle; 4. in the event of a constructive total loss or theft of the covered vehicle; or 5. the date the financing contract/loan is prepaid or the financing contract is refinanced. It is your responsibility to notify the dealer/creditor, in writing, of your request to cancel this coverage and to request a refund/credit of the GAP charges.

**REPORT YOUR TOTAL LOSS TO OUR GAP ADMINISTRATOR:**

AMERICAN HERITAGE INSURANCE SERVICES

**YOUR RIGHT TO CANCEL:** You have the unconditional right to cancel and terminate this optional addendum for a refund/credit of the unearned portion of the charge for this addendum at any time. If any termination occurs within 30 days of the addendum purchase you will receive a full refund/credit of the addendum cost, plus the amount of the applicable finance charge, provided no loss has occurred. After 30 days, you will receive a refund/credit of the addendum cost calculated by the Pro Rata method, or by the refund method as may be required by state or federal law, less a $35.00 cancellation fee. We will refund all charges to the financial institution/lender. To cancel the addendum and request a refund/credit, you must contact the dealer/creditor, in writing, at the address shown above. If you do not receive the refund/credit within 60 days of notice of cancellation/termination, contact the GAP Administrator stated above.

**ENROLLMENT IS AVAILABLE ONLY** AT THE TIME THE FINANCING CONTRACT IS ORIGINALLY EXECUTED. BY YOUR SIGNATURE BELOW, YOU ACKNOWLEDGE AND AGREE THAT YOUR ACCEPTANCE OF THIS GAP ADDENDUM IS VOLUNTARY AND IS NOT REQUIRED IN ORDER FOR YOU TO OBTAIN CREDIT, DOES NOT IMPACT YOUR ABILITY TO OBTAIN ANY PARTICULAR OR MORE FAVORABLE CREDIT TERMS, AND HAS NO EFFECT ON THE TERMS OF THE RELATED SALE OF THIS VEHICLE. This coverage may decrease over the term of your financing contract and may not extend for the full term of your financing contract/loan. You may wish to consult an alternative source to determine whether similar coverage may be obtained and at what cost. You also acknowledge that you have read and understand this addendum and its provisions. No other verbal representations have been made to you that differ from these written provisions. If you purchase GAP from the dealer/creditor, you understand that the financial institution/lender may retain all or a portion of the charge paid by you. This addendum includes a binding arbitration clause. **You should carefully read the back of this addendum for additional information on eligibility, requirements, conditions and exclusions that could prevent you from receiving benefits under this addendum.**

☐ Yes, I accept this GAP addendum and its terms and Conditions.

Customer/Borrower _____          Dealer/Creditor _____

PRINT NAME Tanganyika Gwinn   DATE 5/9/07          BY _____   DATE _____

**ASSIGNMENT:** The GAP addendum will follow the financing contract/loan or lease with no subrogation rights against the customer/borrower, if the financing contract/loan or lease is sold or assigned by the dealer/creditor.

**LIMITATIONS:**
A.  No addendum will be issued for the covered vehicle with a Manufacturer's Suggested Retail Price (MSRP) or NADA retail value of more than $100,000, or if the amount financed exceeds $100,000.
B.  No coverage is provided for that portion of the net payoff that results from the amount financed/lease cap cost exceeding the Maximum Eligibility Limit stated above at the inception date of this addendum and will be deducted from the payable loss due.
C.  The payable loss for financing contract/loans or leases with terms greater than the Maximum Term of GAP stated above will be based on a net payoff calculated using the Maximum Term of GAP stated above.
D.  Any addendum issued for an amount financed in excess of B or C above will be deemed eligible for enrollment as limited by this section.
E.  No coverage is provided for a financing contract/loan or lease that does not have uniform monthly repayment terms for the full period of the financing agreement and/or for a financing contract/loan or lease that is self-financed. Balloon loans are excluded from this Limitation.

**LOSS DOCUMENT PROCEDURES:** In the event of a constructive total loss, you must notify and provide all of the following to our GAP Administrator, American Heritage Insurance Services (at the address shown above): 1. a complete copy of the primary insurance settlement, including the valuation report; 2. a copy of the original financing contract and this addendum; 3. a copy of the accident/police report; 4. a copy of your automobile insurance policy; 5. a copy of the payoff from the financial institution/lender as of the date of loss; 6. a copy of the insurance settlement check; and 7. any additional reasonable documentation requested by your GAP administrator or us. The GAP Administrator will not obtain this information for you. The GAP Administrator must receive this documentation within 90 days of settlement by your primary carrier. No payment will be made if this documentation is not provided to the GAP Administrator within this stated time period.

# NEW COUNTRY
## MOTOR CAR GROUP

| | |
|---|---|
| Buyer's Name: TANGANYIKA GWINN | Date of Retail Installment Contract:<br>04/27/07 |
| Vehicle Year: 06 | Vehicle Make: BMW | Vehicle Model: 650I CPE |
| Vehicle Identification Number: WBAEH13406CR51161 | |

# Acknowledgement and Consent

This disclosure is being provided because you are purchasing the above vehicle on credit. That credit is being provided to you pursuant to a Retail Installment Contract, which is being assigned to (lender) **JPMORGAN CHASE BANK,NA**.

It is important that you realize that (lender) **JPMORGAN CHASE BANK,NA** is giving you the credit to purchase the above vehicle and that it is (lender) **JPMORGAN CHASE BANK,NA**, to whom you must pay the amount financed and any finance charges as set forth in your Retail Installment Contract.

By executing this document and accepting delivery of the above vehicle, you acknowledge (lender) **JPMORGAN CHASE BANK,NA** is your finance source and that you consent to the assignment of your Retail Installment Contract to (lender) **JPMORGAN CHASE BANK,NA**.

(Lender) **JPMORGAN CHASE BANK,NA** is not an agent, partner, co-venturer or representative of this dealership and the dealership does not accept or assume any responsibility for (lender) **JPMORGAN CHASE BANK,NA**, its employees or agents.

Should you have any questions, please ask before signing below.

# Consent

I acknowledge having read the foregoing acknowledgement, understand that (lender) **JPMORGAN CHASE BANK,NA** is providing the financing for the above vehicle and consent to (lender) **JPMORGAN CHASE BANK,NA** as my financing source.

Borrower's Signature: _____   Dated: _____

Co-Borrower's Signature: _____   Dated: _____

*Discover the Difference*

3/2004

New Country Motor Car Group, Inc.
The Granite Palace • 358 Broadway, Suite 403 • Saratoga Springs, NY 12866 • (518) 584-7700 • Fax: (518) 584-8611 • INTERNET: www.newcountry.com

White Copy—Dealership        Yellow Copy—Customer



# Consumer Credit Privacy Notice

In connection with your transaction, ___NEW COUNTRY MOTOR CARS, INC___
*(Name of Dealership)*
may acquire non-public and financial information about you, which it handles as stated in this notice.

This notice applies only if we provide you with financial services such as assisting you in contacting and obtaining potential financing sources. This notice does not apply if we do not provide you with any financial services, such as where you pay cash to buy a new or used automobile or where you arrange your own financing without our assistance.

1. In providing financing services to you, we obtain non-public personal information about you from the following sources:
   - Information we receive from you on applications or other forms;
   - Information about your transaction with us or one of our affiliated automobile dealerships; Information we receive from consumer reporting agencies pursuant to your authorization; and
   - Information we receive from banking institutions pursuant to your authorization.

2. We collect the following type of non-public personal information:
   - your name;
   - your address;
   - your social security number;
   - your bank account number and balance;
   - your credit account number; and
   - any other information you provide us to obtain financing.

3. We do not disclose, nor do we reserve the right to disclose, any non-public personal information about our consumers, customers or former customers to anyone, except as permitted by law. Under the law, we are permitted and may disclose all of the information we collect as described above about our consumers, customers and former customers, to companies that perform marketing services or other functions on our behalf or to other financial institutions with whom we have joint marketing agreements.

4. We restrict access to your personal and account information to those employees who need to know that information to provide products or services to you. In addition, we maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard your nonpublic personal information.

CUSTOMER ACKNOWLEDGEMENT:

I (we) acknowledge that I (we) received a copy of this notice on the date indicated below.

Customer's Signature: _____   Date Signed: _____ 04/27/07

Customer's Name (printed) ___TANGANYIKA GWINN_____

Co-Customer's Signature: _____   Date Signed: _____ 04/27/07

Co-Customer's Name (printed) _____

*Discover the Difference*                                                                 01/2004

---

New Country Motor Car Group, Inc.
The Granite Palace ▪ 358 Broadway, Suite 403 ▪ Saratoga Springs, NY 12866 ▪ (518) 584-7700 ▪ FAX: (518) 584-8611 ▪ INTERNET: www.newcountry.com

Original—Dealership Copy          Yellow—Customer Copy

Experian - Printable Full Report                                      Page 4 of 35

|      |      |      |      | 2008 |      |      |      |      |      |      |      |      |      |      |      |      |      | 2007 |      |
|------|------|------|------|------|------|------|------|------|------|------|------|------|------|------|------|------|------|------|------|
| JUN  | MAY  | APR  | MAR  | FEB  | JAN  | DEC  | NOV  | OCT  | SEP  | AUG  | JUL  | JUN  | MAY  | APR  | MAR  | FEB  | JAN  | DEC  | NOV  |
| ND   | ND   | ND   | ND   | CO   | 150  | 120  | 90   | 60   | 30   | 30   | OK   | OK   | OK   | OK   | OK   | OK   | OK   | OK   | OK   |

| OCT | SEP | AUG | JUL | JUN | MAY |
|-----|-----|-----|-----|-----|-----|
| OK  | OK  | OK  | OK  | OK  | OK  |

**Account History:**
Charge Off as of Feb 2009
180 days past due as of Feb 2009
150 days past due as of Jan 2009
120 days past due as of Dec 2008
90 days past due as of Nov 2008
60 days past due as of Oct 2008
30 days past due as of Sep 2008, Aug 2008



**CHASE**
**Address:**                                    **Account Number:**
PO BOX 901076                                   ██████████████
FORT WORTH, TX 76101
(800) 955-9900
**Address Identification Number:**
0410557096
**Status:**  Account charged off. $20,482 written off.          **Status Details:** This account is scheduled to continue on record until Oct 2017.

**Date Opened:**              **Type:**                    **Credit Limit/Original Amount:**
05/2007                       Auto Loan                    $60,614
**Reported Since:**           **Terms:**                   **High Balance:**
05/2007                       72 Months                    NA
**Date of Status:**           **Monthly Payment:**         **Recent Balance:**
09/2012                       $0                           $0 as of 09/2012
**Last Reported:**            **Responsibility:**          **Recent Payment:**
09/2012                       Individual                   $0
**Payment History:**

| 2012 |     |     |     |     |     |     | 2011 |     |     |     |     |     |     |     |     |     |     |
|------|-----|-----|-----|-----|-----|-----|------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| SEP  | AUG | JUL | JUN | MAY | APR | MAR | FEB  | JAN | DEC | NOV | OCT | SEP | AUG | JUL | JUN | MAY | APR | MAR | FEB |
| CO   | 90  | 90  | 60  | 60  | 60  | 60  | 60   | 60  | 60  | 60  | 30  | 60  | 60  | 30  | 30  | 60  | 60  | 30  | 30  |

| 2010 |     |     |     |     |     |     | 2009 |     |     |     |     |     |     |     |     |     |     |
|------|-----|-----|-----|-----|-----|-----|------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| JAN  | DEC | NOV | OCT | SEP | AUG | JUL | JUN  | MAY | APR | MAR | FEB | JAN | DEC | NOV | OCT | SEP | AUG | JUL | JUN |
| 30   | 30  | 30  | 30  | 30  | 30  | OK  | 30   | 30  | 30  | OK  | 30  | OK  | OK  | 30  | OK  | 30  | 30  | OK  | OK  |

| 2008 |     |     |     |     |     |     |     |     |     |     |     |     |     | 2007 |     |     |     |
|------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|------|-----|-----|-----|
| MAY  | APR | MAR | FEB | JAN | DEC | NOV | OCT | SEP | AUG | JUL | JUN | MAY | APR | MAR | FEB | JAN | DEC | NOV | OCT |
| OK   | OK  | OK  | OK  | OK  | OK  | OK  | OK  | OK  | OK  | OK  | OK  | OK  | OK  | OK   | OK  | OK  | OK  | OK  | OK  |

| SEP | AUG | JUL | JUN | MAY |
|-----|-----|-----|-----|-----|
| OK  | OK  | OK  | OK  | OK  |

**Account History:**
Charge Off as of Sep 2012
90 days past due as of Aug 2012, Jul 2012
60 days past due as of Nov 2011 to Jun 2012, Sep 2011, Aug 2011, May 2011, Apr 2011
30 days past due as of Oct 2011, Jul 2011, Jun 2011, Jan 2011 to Mar 2011, Aug 2010 to Oct 2010, Jun 2010, May 2010, Feb 2010, Jan 2010, Nov 2009, Sep 2009, Aug 2009

**Balance History -** The following data will appear in the following format:
*account balance / date payment received / scheduled payment amount / actual amount paid*
Aug 2012: $20,534 / August 24, 2012 / $1,179 / $1,200
Jul 2012: $21,517 / June 27, 2012 / $1,179 / no data
Jun 2012: $21,287 / June 27, 2012 / $1,179 / $1,200
May 2012: $22,278 / May 4, 2012 / $1,179 / $1,200
Apr 2012: $23,240 / April 9, 2012 / $1,179 / $1,200
Mar 2012: $24,207 / March 15, 2012 / $1,179 / $1,200
Feb 2012: $25,155 / February 10, 2012 / $1,179 / $1,200

10/23/2012

Experian - Printable Full Report                                    Page 4 of 35

| | | | | | | **2008** | | | | | | | | | | | | **2007** | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| JUN | MAY | APR | MAR | FEB | JAN | DEC | NOV | OCT | SEP | AUG | JUL | JUN | MAY | APR | MAR | FEB | JAN | DEC | NOV |
| ND | ND | ND | ND | CO | 150 | 120 | 90 | 60 | 30 | 30 | OK | OK | OK | OK | OK | OK | OK | OK | OK |

| OCT | SEP | AUG | JUL | JUN | MAY |
|---|---|---|---|---|---|
| OK | OK | OK | OK | OK | OK |

**Account History:**
Charge Off as of Feb 2009
180 days past due as of Feb 2009
150 days past due as of Jan 2009
120 days past due as of Dec 2008
90 days past due as of Nov 2008
60 days past due as of Oct 2008
30 days past due as of Sep 2008, Aug 2008



**CHASE**
**Address:**
PO BOX 901076
FORT WORTH, TX 76101
(800) 955-9900
**Address Identification Number:**
0410557096
**Status:** Account charged off. $20,482 written off.

**Account Number:**

**Status Details:** This account is scheduled to continue on record until Oct 2017.

| **Date Opened:** | **Type:** | **Credit Limit/Original Amount:** |
|---|---|---|
| 05/2007 | Auto Loan | $60,614 |
| **Reported Since:** | **Terms:** | **High Balance:** |
| 05/2007 | 72 Months | NA |
| **Date of Status:** | **Monthly Payment:** | **Recent Balance:** |
| 09/2012 | $0 | $0 as of 09/2012 |
| **Last Reported:** | **Responsibility:** | **Recent Payment:** |
| 09/2012 | Individual | $0 |

**Payment History:**

| **2012** | | | | | | | | | | | | **2011** | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SEP | AUG | JUL | JUN | MAY | APR | MAR | FEB | JAN | DEC | NOV | OCT | SEP | AUG | JUL | JUN | MAY | APR | MAR | FEB |
| CO | 90 | 90 | 60 | 60 | 60 | 60 | 60 | 60 | 60 | 60 | 30 | 60 | 60 | 30 | 30 | 60 | 60 | 30 | 30 |

| | **2010** | | | | | | | | | | | **2009** | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| JAN | DEC | NOV | OCT | SEP | AUG | JUL | JUN | MAY | APR | MAR | FEB | JAN | DEC | NOV | OCT | SEP | AUG | JUL | JUN |
| 30 | OK | 30 | 30 | 30 | 30 | 30 | 30 | 30 | OK | 30 | OK | 30 | 30 | 30 | OK | 30 | 30 | OK | OK |

| MAY | APR | MAR | FEB | **2008** | | | | | | | | | | | **2007** | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | JAN | DEC | NOV | OCT | SEP | AUG | JUL | JUN | MAY | APR | MAR | FEB | JAN | DEC | NOV | OCT |
| OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |

| SEP | AUG | JUL | JUN | MAY |
|---|---|---|---|---|
| OK | OK | OK | OK | OK |

**Account History:**
Charge Off as of Sep 2012
90 days past due as of Aug 2012, Jul 2012
60 days past due as of Nov 2011 to Jun 2012, Sep 2011, Aug 2011, May 2011, Apr 2011
30 days past due as of Oct 2011, Jul 2011, Jun 2011, Jan 2011 to Mar 2011, Aug 2010 to Oct 2010, Jun 2010, May 2010, Feb 2010, Jan 2010, Nov 2009, Sep 2009, Aug 2009

**Balance History** - The following data will appear in the following format:
*account balance / date payment received / scheduled payment amount / actual amount paid*
Aug 2012: $20,534 / August 24, 2012 / $1,179 / $1,200
Jul 2012: $21,517 / June 27, 2012 / $1,179 / no data
Jun 2012: $21,287 / June 27, 2012 / $1,179 / $1,200
May 2012: $22,278 / May 4, 2012 / $1,179 / $1,200
Apr 2012: $23,240 / April 9, 2012 / $1,179 / $1,200
Mar 2012: $24,207 / March 15, 2012 / $1,179 / $1,200
Feb 2012: $25,155 / February 10, 2012 / $1,179 / $1,200

Affiant:

Tanganyika Gwinn

69 Congress Street # C

Hartford, CT 06112

Respondents:

Annemarie DeTommaso

Vice President

JPMorgan Chase Bank, NA

900 Stewart Avenue, Fifth Floor

Garden City, New York 11530

Cindy Corrado

Executive Specialist/Chase Auto Finance Executive Office

JPMorgan Chase Bank, NA

900 Stewart Avenue, Fifth Floor

Garden City, New York 11530

Carbon Copy:

Experian

NCAC

P.O. Box 9701

Allen, TX 75013

March 27, 2013

REGARDING: DEROGATORY REPORTING ON CREDIT OF Tanganyika Gwinn TO EXPERION ON ACCOUNT
#███████████

REFERENCE: 2006 BMW VIN Number WBAEH13406CR51161

Encl (1) Evidence of Derogatory Record

To the Respondents,

1.   This is an attempt to validate a debt, against Jamie Dimon, Vice President of JPMorgan Chase Bank, NA, the present Executive Specialist of JPMorgan Chase Bank, NA (hereinafter "CFO"), and JPMorgan Chase Bank, NA (, the parties of which may collectively be known as "Debt Collector(s)", under the Federal Debt Collection Practices Act (hereinafter FDCPA). I am exercising my legal right to validate a debt that your agency claims is owed.

2.   In accordance with the attached record it appears that derogatory and defamatory information was ledgered to a Credit Monitoring Company by JPMorgan Chase Bank,NA, which has resulted in my being damaged, as such action causes the by way of denial of credit due to the inaccurate information.   Seen Enclosure (1).

3.   This response is not a refusal to pay, this is my conditional acceptance pursuant to conditions being met as required by the Fair Debt Collection Practices Act (hereinafter FDCPA), 15 USC 1692g Sec. 809(b), and other applicable laws to be further stated herein. I accept your claim, contingent upon the Debt Collector(s) providing verifications and validation as follow:

   a.   I demand you provide verification of your claim that the Account ████████████ held by JPMorgan Chase Bank, NA, is not paid in full. I have seen no evidence to support any allegations to the contrary, and I believe no such evidence exists.

   b.   I demand proof of claim, that JPMorgan Chase Bank,NA, it's CFO, or Jamie Dimon, is the original holder in due course or proper assignee of the alleged obligatory instrument on Account of ████████   Your proof must include the evidentiary requirements of section (a) or (b) below:

      (1)   To provide proof you must exhibit an original, or a genuine instrument in accordance with the UCC inter alia, Connecticut State Law, UCC § 42a-3-501, and any local applicable laws, inclusive of the genuine original Promissory Note and genuine original allonge(s) showing chain of title, and the official accounting ledger.

      (2)   To provide proof you must exhibit an authoritative copy of the obligatory instrument or record, timed and date-stamped, which identifies the JPMorgan Chase Bank, NA, as the assignee of the alleged Secured Party as the assignee of the record or records. To be valid, copies or revisions that add or change the Assignee of the authoritative copy can be made

only with the participation of the secured party pursuant UCC § 9-105.

4.    I demand proof that the Account # ███████ does not reflect a zero (0) balance. I have seen no proof to support your allegation and I believe no such proof exists.

5.    Upon providing documentary evidence which challenges the Authentic Statement of Accounting annexed hereto, then demand is placed upon JPMorgan Chase Bank, NA to provide a complete Financial Audit and Accounting of Account # ███████ inclusive of the payoff day, to show all ledgering resulting in the incrementing balance, certified to be zero (0) as of September, 2012 pursuant UCC § 9-210. The audit and accounting shall be conducted in accordance with the Generally accepted government auditing standards, the Comptroller General's standards for audits of federal organizations, OMB Circular A-732 as basic audit criteria for federal agencies.

7.    Upon providing sufficient validation, verification, and proof by your responses to paragraphs 1 - 4, You must provide a True Bill, for full amount owed, in accordance with the results of the Audit and Accounting.

9.    I am demanding proof of claim that there is money in circulation, by which any debt including this one alleged by Jamie Dimon and JPMorgan Chase Bank, NA may be paid, and that the value of the attached is not sufficient to discharge this debt under the following laws:

    a.    Fair debt collection Practices ACT (FDCPA), 15 U.S.C. § 1692 et seq., 1978 Title VIII of the Consumer Credit Protection ACT of 1978

    b.    The Indentured Trust ACT of 1939

    c.    HJR 192, 112 Statutes at Large 48, and P.L. 73.10 of 1933

    d.    The Securities Exchange Act of 1934

    e.    The Fair Credit reporting Act Public Law No. 91-508 enacted in 1970

    f.    The Bankruptcy ACT of 1933

    g.    12 USC 411, P.L. 97-280

    h.    UCC 1-103, 1-308, 2-221, 2-104, 3-415-419, 3-500-510

10.    The Debt Collector is given notice that pursuant U.S.C. sec 1692g[b]: if the consumer gives notice to the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a void judgment, or the name and address of the original creditor, is mailed to the consumer by the collector, and in 15 U.S.C. §§ 1681-1681(u).  If any of these accounts are over seven (7) years old, cannot be verified and/or have been discharged, written off, charged off, sold, referred to a third party, or cannot be validated, Affiant requires that these statements be deleted from the Consumers credit report.

11.    Be advised that verification in defined (Black's Law Dictionary, Sixth Edition) as follows:  "Confirmation of correctness, truth, or authenticity, by affidavit, oath or disposition".  Affidavit of truth of matter stated and object of verification is to assure good faith in averments or statements of party.

12.    Debt collector is further Noticed that this is not a request by Affiant for a photocopy of any invoice, statement, bill, summary, agreement and the like and that any future communication received by Affiant from Debt Collector, in written as well as any other form, absent the above-cited requisite "Verification of debt", irrespective of the inclusion of any photocopy of any related involve, statement, bill summary, agreement, and the like, constitutes Debt Collector's tacit admission, confession and agreement that Debt Collector has no lawful, bona fide, verifiable claim, re the alleged account, as per the Fair Credit Reporting Act and the Fair Debt Collection Practices, and Uniform Commercial Code (UCC).

13.    This lawful request is made in accords with the aforementioned authorities and shall further serve as a request for records as set-forth in the Administrative Procedure Act [USC 5 § 551]. In addition to other applicable provisions under this Act, you are advised of the obligation to notify me within Ten (10) days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of my request to inform me of any refusal or unwillingness to comply, or provide records.

13.    This is NOT a request for verification only, but a request for validation and/or accounting where necessary as described above. During this verification and validation period, should any action be undertaken which could be detrimental to any portion of the credit files related hereto, it will constitute a breach and will result in consultation with legal counsel. This includes any listing of any information to any credit reporting repository that could be inaccurate or invalid or verifying an account as accurate when in fact there is no certified valid proof that it is.

14.    If a response confirming your willingness to comply not received within Ten 10 days from the date of your receipt, all references and/or derogatory information reported to this account must be completely removed from the credit file and a copy of such deletion request shall be sent to the addressee immediately. Your response to the allegations shall not exceed thirty (30) days,

which is inclusive of any other timelines specified by the governing law and this conditional acceptance.

15.   Contracts of adhesion are hereby terminated between Jamie Dimon and JPMorgan Chase Bank, NA.

16.   Your offer is now received and you now have our bankers acceptance of the value of your offer for value.   You may choose either option, to balance the account and bring to zero.   Or you may choose the option of providing us the verification documentation requested above.

17.   All statements, rebuttals, and responses to this validation request must be made in writing verified in the presence of an authorized officer or notary public, signed and sworn to under penalty of perjury including the name, title, office, and telephone number of any official from JPMorgan Chase Bank, NA, which shall serve to insure high standards of honesty, impartiality, character, and conduct as in accordance with Title 5 CFR Part 735.

18.   Nothing in this document shall be construed as a waiver of any rights. The affiant may use any and all responses as an attempt for determining the nature and basis of a case/counterclaim against Debt Collector, and any intonation contained within Debt Collector's Disclosure Statements, as well as any information obtained otherwise, such as by Debt Collector's commissions, omissions, and the like, will be used for that purpose

19.   If your offices have reported invalid information to any of the three major Credit Bureau's (Equifax, Experian or TransUnion), said action might constitute fraud under both Federal and State Laws. Therefore, if any negative mark is found on any of my credit reports by your company or the company that you represent, and the prescribed evidence is not provided we will not hesitate in bringing legal, lawful, and administrative actions against JPMorgan Chase Bank, NA as well as the individuals responsible for breach of trust and damages to my person.

Failure to Register dispute against the claims made herein will result in an automatic default judgment and permanent and irrevocable estoppels by acquiescence barring the bringing of charges
under any statue or Act against My Self Tanganyika Gwinn.

Sincerely,

Tanganyika Gwinn

State of Connecticut         )
                             ) ss    JURAT
County of Fairfield          )

On this 31 day of March in the year 2013, before me, the undersigned notary public, personally appeared Tanganyika Gwinn, known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes therein contained.   In witness whereof, I hereunto set my hand and official seal.

Notary/Witness

WENDI TAYLOR
Notary Public
Connecticut
My Commission Expires Mar 31, 2017

One will expect Experian to complete Experian's investigation within thirty (30) calendar days from the date Experian receives this dispute for investigation, or the item(s) being disputed will be considered unverifiable, subject to Permanent Deletion for this ET's Experian Credit Report.

Signed By:

Tanganyika Gwinn

Affiant:
Tanganyika Gwinn
69 Congress Street # C
Hartford, Connecticut

I declare that to the best of my knowledge and belief, the information herein is true, correct and complete.

NOTICE to AGENTS is NOTICE to PRINCIPAL/NOTICE to PRINCIPAL is NOTICE to AGENTS.

My statement of fact under penalty of Perjury
April 16, 2013

Respondents:
Cindy Corrado
Executive Specialist/Chase Auto Finance Executive Office
JPMorgan Chase Bank, NA
900 Stewart Avenue, Fifth Floor
Garden City, New York 11530

Annemarie DeTommaso
Vice President
JPMorgan Chase Bank, NA
900 Stewart Avenue, Fifth Floor
Garden City, New York 11530

REGARDING: Repossession of 2006 BMW VIN Number WBAEH13406CR51161

REFERENCE: VALIDATION OF DEBT IN REGARDS TO ACCOUNT # ▮▮▮▮▮▮▮ / Derogatory Reporting on Credit of Tanganyika Gwinn To Experian.

To the Respondents,

On March 28, 2013 a Letter sent Certified with Return Receipt 70070710000323967471 to JPMorgan Chase Bank, N.A. requesting a True Bill for the full amount owed. (See Attached)

On April 4, 2013 a Letter from JPMorgan Chase Bank, N.A., which is attached, rejected and returned for failure to Certify Under the Penalties of Perjury and nonsufficient evidence to what was demanded to validate such debt.

On April 15, 2013 about 6:30 pm, North East Auto Machine located at 392 Tolland Street 2nd Floor, East Hartford, CT 06108 came on the property 187 pine lane Ext., Windsor CT 06095 and repossessed the 2006 BMW VIN Number WBAEH13406CR51161.

You are in violation with the Fair debt collection Practices Act (FDCPA), 15 U.S.C. 1692f § 808 (6) A-C, Unlawful Repossession of the 2006 BMW VIN Number WBAEH13406CR51161.

I can not make a legal determination in regards to the validation of such debt without **Proof of Claim** that such debt exists.

JPMorgan Chase Bank, N.A., until you provide Me with sufficient validation, proof, and statement(s) made under penalties of perjury about the above regarding, **immediately cease and desist the proceedings, return the 2006 BMW VIN Number WBAEH13406CR51161, Release the Title, and remove Derogatory Reporting on Credit of Tanganyika Gwinn To Experian. All Debts are Satisfied.**

All statements, rebuttals, and responses to this validation request must be made in writing within Fourteen (14) days upon receipt of this letter, verified in the presence of an authorized officer or notary public, signed and sworn to under penalty of perjury including the name, title, office, and telephone number of any official from JPMorgan Chase Bank, NA, which shall serve to insure high standards of honesty, impartiality, character, and conduct as in accordance with Title 5 CFR Part 735.

You have forced Me to file a sworn complaint for fraud with the district court, and You subpoenaed to testify for your actions.

_Letricia V_
Witness _Leticia Vazquez_

This is my, Tanganyika Gwinn the living Woman, freewill act and deed, under my hand and seal.

_Tanganyika Gwinn_

Witness _Qunicia Miller_

State of Connecticut     )
                             ) ss   JURAT
County of Hartford      )

On this 17th day of April in the year 2013, before me, the undersigned notary public, personally appeared Tanganyika Gwinn, known to me to be the person whose name is subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes therein contained.   In witness whereof, I hereunto set my hand and official seal.

_Latasha Edds_
Notary/Witness

> LATASHA M EDWARDS
> Notary Public
> Connecticut
> My Commission Expires Apr 30, 2017

_Tanganyika Gwinn_
Tanganyika Gwinn, Authorized Representative

Page **2** of **2**